**UNITED STATES of America, Appellee,**

v.

**Angelo RUGGIERO,
Defendant-Appellant.**

**No. 387, Docket 87–1327.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 24, 1987.

Decided Dec. 16, 1987.

John L. Pollok, New York City (Mark A. Summers, Todtman, Hoffman, Epstein, Young, Goldstein, Tunick & Pollok, New York City, of counsel), for defendant-appellant.

Peter A. Norling, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Emily Berger, Asst. U.S. Atty., of counsel), for appellee.

Before VAN GRAAFEILAND, WINTER and MAHONEY, Circuit Judges.

WINTER, Circuit Judge:

Angelo Ruggiero appeals from a July 10, 1987 order holding him in summary contempt and fining him $10,000 under Fed.R. Crim.P. 42(a). Ruggiero contends that Judge Costantino's finding of contempt was an abuse of discretion, or alternatively that the fine was excessive. We affirm the contempt conviction but reduce the fine to $2,000.

■ A United States judge has the power, under Rule 42(a) and 18 U.S.C. § 401 (1982), to punish summarily as contempt misbehavior which " 'is in the presence of the judge and is known to him, and where immediate corrective steps are needed to restore order and maintain the dignity and authority of the court.' " *United States v. Martin–Trigona*, 759 F.2d 1017, 1024 (2d Cir.1985) (quoting *Johnson v. Mississippi*, 403 U.S. 212, 214, 91 S.Ct. 1778, 1779, 29 L.Ed.2d 423 (1971) (per curiam)). These conditions were met in the instant case.

Ruggiero's outburst took place during a tense and volatile multi-defendant criminal trial, in which the district court had been forced on other occasions to warn the defendants to stop interrupting witnesses, using foul language, or otherwise showing

their disrespect for the proceedings.[1] Just before the cited conduct occurred, the district court, in the absence of the jury, had granted a government motion to exclude two potential witnesses from the courtroom. Defense counsel—not for the first time—had continued to oppose the ruling after it had been made and had directed antagonistic questions to the district court. At that point, defendant Oscar Ansourian interrupted and was warned by the court to be silent. He obeyed. Ruggiero then intervened and accused the district court of infringing upon his constitutional rights. After Ruggiero's outburst, the district court warned his counsel to silence Ruggiero. Ruggiero nevertheless persisted in his comments and directed them personally at the court. A transcript of this colloquy is set forth in the margin.[2]

1. On June 10, for example, co-defendant Oscar Ansourian interrupted the testimony of a government witness to accuse the witness of perjury. Judge Costantino responded with the following warning: "You talk again and you'll definitely be taken care of. You have a lawyer and a lawyer represents you." The next day, Judge Costantino was forced to admonish those present not to use foul language and to warn a co-defendant who had visibly displayed dissatisfaction with the court's rulings. The court stated that a warning about physical gestures was necessary "to maintain the respect and dignity of the court." Judge Costantino then warned against any future incidents: "I'm saying that I'll not accept any outburst from any of the defendants or their lawyers ... unless it's proper circumstances." Finally, on June 18, after the defendants had continued to interrupt the proceedings and to direct improper remarks at him and his conduct of the trial, Judge Costantino cautioned: "When I speak I expect silence. That [open colloquy] is not how cases are tried in my court. I'm sure it won't happen again."

2. MR. FOGELNEST [attorney for a co-defendant]: If there's nothing I can say to persuade you then I will sit down. But if the Court has an open mind—
THE COURT: No. I had an open mind and now it's closed when I made the ruling. I made the ruling and I excluded them from the courtroom.
MR. FOGELNEST: I don't think you have taken everything into account.
THE COURT: Why argue? You said I didn't have an open mind and then you would sit down.
MR. FOGELNEST: I am asking you if you don't—I ask you to open it up and consider—
THE COURT: I will not. I made my ruling.
MR. FOGELNEST: Then let me tell you what you should open it to and what you should consider. Okay? Number one, there is no prejudice to anyone in this case except the defense. And what Mr. LaRusso has done here—
THE COURT: No, it doesn't affect your client. That's for sure.
MR. FOGELNEST: If you will give me a severance or a limiting instruction—
THE COURT: All right. Who else wants a severance?
MR. FOGELNEST: I am not finished. If you order—

THE COURT: The application is denied.
MR. FOGELNEST: Your Honor, the reporter takes down what you say when you speak over me. If you cut me off—
THE COURT: He better.
MR. FOGELNEST: As you have done to every lawyer here, we can't make a record.
THE COURT: I know that.
MR. FOGELNEST: I would ask to be permitted to make a record and make the argument.
THE COURT: I want to hear no more. That's the end of the record.
MR. BRAFFMAN [Attorney for another co-defendant]: I asked your Honor just explain in twenty-five words or less why, why, your Honor, other than the fact that the government doesn't want them there, why is your Honor granting this—making this ruling? Why? What reason?
THE COURT: I think you are trying to raise a question of prejudice.
MR. BRAFFMAN: Absolutely. Because—
THE COURT: Why don't you say your Honor is being prejudicial. That's why. Why don't you be honest?
DEFENDANT ANSOURIAN: I will be honest.
THE COURT: You keep quiet.
DEFENDANT RUGGIERO: We got a constitutional right.
THE COURT: You better control your client. I am telling you now, you better control them.
DEFENDANT RUGGIERO: Control me? You have been making remarks to me for the last—
THE COURT: He's fined ten thousand dollars for opening his mouth.
DEFENDANT RUGGIERO: Fine me ten thousand?
THE COURT: Ten thousand at this point.
DEFENDANT RUGGIERO: Where will you get it from? From the Welfare Department?
THE COURT: Anyone else want to get—let's start with the trial. Ten thousand dollars. It must be paid within a week.
DEFENDANT RUGGERIO: If not, what? Thirteen months?
THE COURT: You will see.
DEFENDANT RUGGIERO: Thirteen months.
THE COURT: You keep quiet.
DEFENDANT RUGGIERO: You have been passing remarks to me for the last ten weeks. I've got constitutional rights.
THE COURT: Take him away, Marshal.
DEFENDANT RUGGIERO: Take me away?
THE COURT: He is not going to—take him away.

Under such circumstances, the district court was free to conclude that the decisive action of holding Ruggiero in contempt was necessary to prevent the disruption of the trial. *See, e.g., United States v. Lumumba,* 794 F.2d 806, 811, 815 (2d Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 192, 93 L.Ed.2d 125 (1986); *United States v. Stratton,* 779 F.2d 820, 836 (2d Cir.1985), *cert. denied,* 476 U.S. 1162, 106 S.Ct. 2285, 90 L.Ed.2d 726 (1986). Ruggiero's conduct was far more serious and less justifiable than the challenged conduct in the cases that he cites. Unlike *In re McConnell,* 370 U.S. 230, 235–36, 82 S.Ct. 1288, 1292, 8 L.Ed.2d 434 (1962), Ruggiero did not comply with the court's order to be silent, and he was not an attorney attempting to preserve a client's legal rights. Similarly distinguishable are *In re Little,* 404 U.S. 553, 555, 92 S.Ct. 659, 660, 30 L.Ed.2d 708 (1972), where a *pro se* defendant had argued in summation that the court was biased and that the defendant was a political prisoner, and *In re Williams,* 509 F.2d 949, 958 (2d Cir.1975), where a witness habitually volunteered information instead of answering the questions posed.

Ruggiero's claim that the district court did not provide him with an opportunity to be heard before holding him in contempt confuses Rules 42(a) and 42(b). Summary contempts under Rule 42(a) may be adjudicated without notice or hearing because of the need for an immediate adjudication and punishment of contumacious conduct. As a result, the granting of an opportunity to speak is within the district court's discretion. *See Martin–Trigona,* 759 F.2d at 1026.

Ruggiero also argues that he was entitled to a warning specifically directed to him. Even if the district court's admonition to his counsel to silence Ruggiero is not considered such a warning, the court's previous warning to the other defendant clearly served to place Ruggiero on notice that his conduct was contumacious. Multi-defendant trials might quickly descend into anarchy if each defendant were free to disregard warnings of general applicability albeit specifically directed to another defendant.

We agree with appellant, however, that the district court's imposition of a $10,000 fine was excessive under the circumstances. In view of the fact that the sanction was the first imposed upon anyone in these proceedings, we believe that a fine of $2,000 is sufficient to punish Ruggiero and to put the other participants on notice that disruptive conduct must cease. Accordingly, we exercise our "special responsibility," *United States v. Gracia,* 755 F.2d 984, 989 (2d Cir.1985), to revise the excessive contempt sentence imposed in this case.

The judgment of conviction is affirmed, but the fine is reduced to $2,000.

DEFENDANT RUGGIERO [addressing his counsel, Mr. Hoffman]: Don't talk for me from your mouth. [To the Court] I got constitutional rights that you have been knocking for the last ten weeks with your remarks.
THE COURT: Take him out.

DEFENDANT RUGGIERO: You remand me through an outburst, not a threat. They put you there as a pawn for the government.
[Defendants Ruggiero and Ansourian leave courtroom].