UNITED STATES of America, Appellee,

v.

Nicholas ALLOCCO, Defendant,

Ronald Rubinstein, Esq., Appellant.

No. 1277, Docket 92–1734.

United States Court of Appeals,
Second Circuit.

Argued April 8, 1993.

Decided May 21, 1993.

Bridget M. Rohde, Brooklyn, NY, Asst. U.S. Atty., E.D.N.Y. (Mary Jo White, U.S. Atty., E.D.N.Y., Susan Corkery, Asst. U.S. Atty., E.D.N.Y., of counsel), for appellee.

John L. Pollok, New York City (Hoffman & Pollok, of counsel), for appellant.

Before: McLAUGHLIN and FEINBERG, Circuit Judges, and TENNEY, District Judge.*

TENNEY, Senior District Judge:

Ronald Rubinstein, Esquire, appeals from a summary criminal contempt order entered in the Eastern District of New York, Spencer Williams, *District Judge*, of the Northern District of California, sitting by designation, issued after the judge repeatedly warned Rubinstein to cease a certain line of questioning during the cross-examination of a government witness. The contempt order entered against appellant imposed a conditional fine of $5000, which, if paid to Brooklyn Law School, would purge the contempt.

On appeal, Rubinstein claims that the contempt order was improperly entered in the

first instance, that even if it was proper the fine was too high, and that the "purgation provision" added to the order by Judge Williams was inappropriate.

For the reasons set forth below, we affirm the entry of the contempt order, but reduce the fine and vacate the purgation provision.

## BACKGROUND

Rubinstein defended Nicholas Allocco against charges of mail fraud at a jury trial. Allocco was accused of inflating insurance claims for damages to his warehouse, a wood-frame building located at 989 Wyckoff Avenue ("989 Wyckoff") that was damaged by arson. The government attempted to show that Allocco fraudulently obtained insurance for 989 Wyckoff by initially stating that he wanted to insure a secure, non-combustible building at 149–05 177th Street ("the 177th Street property"), and then transferring the insurance to 989 Wyckoff. The government's second witness, Anthony Palese, occupied the building on the 177th Street property, and rented out parts of the building. The prosecution questioned him for only a brief time, establishing that he had never rented to Allocco, and that Allocco had no legal justification for listing the building on his insurance policy and later shifting the insurance to 989 Wyckoff. Tr. 52–53.

Rubinstein asked questions on cross-examination that drew objections from the prosecution as outside the scope of direct. Judge Williams sustained the objections, which were first raised when Rubinstein asked Palese about the terms of his lease. The government was directed to give the defense a copy of the lease for the 177th Street property, and Rubinstein was directed to avoid the subject of the lease. The court made it clear in the exchange (set out below in relevant part) that Rubinstein could recall the witness later, but could not question the witness about the lease on cross-examination.[1]

* The Honorable Charles H. Tenney, Senior District Judge of the United States District Court for the Southern District of New York, sitting by designation.

1. Mr RUBINSTEIN. And had you ever produced the lease for 177th Street?

Ms. ROHDE· Objection, your Honor.
    '*    *    *    *    *    *
THE COURT Sustained.... This seems to be way beyond the scope of direct.
         *    *    *    *    *    *
Mr RUBINSTEIN. I move to strike his testimony. He says he has a lease and we're supposed

Rubinstein asked at least one more question about Palese's lease, and again the government's objection was sustained. Tr. 59–60. He then asked Palese whether his family had known the defendant in the past. After the government objected on the basis of relevance, the court sustained the objection, stating in a sidebar that Rubinstein was not to discuss the lease. Rubinstein explained that he was not asking about the lease, but was trying instead to establish that his client had kept videotapes at the witness's warehouse, and that Palese was lying when he said there was no relationship between him and Allocco. The court responded, "That's part of your case, that's not the government's case." The court sustained the government's objection, telling Rubinstein he could recall the witness and impeach him at that time.[2]

Rubinstein then questioned Palese about the warehouse, and after objection, the judge stated that Rubinstein could recall the witness to introduce the evidence about which he had been questioning him.[3] After the court cut off Rubinstein for a fifth time, Tr. 65, Rubinstein—evidently oblivious to the judge's directives—again asked Palese about the defendant's videotapes and whether they were transferred to the 177th Street warehouse at any time. Following an objection, the court excused the jury and held Rubinstein in contempt, fining him $5,000.[4]

to accept it, Judge. They have the lease in their possession, they don't want to turn [it] over.... They take something from this man that he has here, they hold on to it and then they say the defense can't have it. I'm asking for it.

Ms. ROHDE. He can have it. What I'm saying is this—

THE COURT· It's part of [the defendant's] case, not [the government's] case.... [to the prosecutor:] You can give him a copy of the lease.

Ms. ROHDE. Certainly, I will.

MR RUBINSTEIN How can I ask him who the lease is between if I don't have the lease?

THE COURT. I said she'll give you a copy of the lease.

If you need this witness back, you can have him back. But you can't do it now through this witness.

MR. RUBINSTEIN: Fine, your Honor.

Tr. 59.

2.    THE COURT I said earlier as far as the lease is concerned, I'll have her give you a copy, you can look it over and if there's anything relevant you can bring it to my attention and call him back.

MR. RUBINSTEIN· I'm not talking about the lease. I'm talking about the fact that my client [—] and [Palese] knows it [—], had substantial numbers of tapes at the 182nd Street location.... I think I should be allowed to establish the fact [that] there was a tape relationship between Allocco and the Palese family.

THE COURT That's part of your case, that's not the government's case.

MR RUBINSTEIN He says there w[ere] no tapes there. I'm showing there were tapes there and I'm showing it by—

THE COURT· Where?

MR. RUBINSTEIN. At this location and 177th Street.

Ms. ROHDE· All direct was about was whether this man rented from him at that relevant period of time.

THE COURT. Sustained.

You can call him back at a later period of time if you prove that it's relevant. You can't prove your case beyond the scope of the direct examination itself.

After you get the lease and after I listen to further argument outside the presence of the jury, I'll let you call him back if I feel that it's relevant. We'll get a copy of his testimony so you can see that's what you said and you can impeach him on that.

Tr. 62–63.

3.    MR RUBINSTEIN· At 182nd Street, the prior location [of Palese's business], is it a fact that only part of that warehouse was bonded?

WITNESS: I don't recall. I don't know that answer.

Ms. ROHDE: Objection, your Honor.

THE COURT. Beyond the scope of direct, counsel.

You can terminate that portion of the examination. If we need to, we'll call the witness back. This is not the stage to bring this evidence.

Tr. 64.

4.    MR RUBINSTEIN· And when [a particular business] moved from 182nd Street to 177th Street, Nick Allocco and his tapes moved?

Ms. ROHDE. Objection, your Honor.

MR RUBINSTEIN: Moved with his tapes and containers?

THE COURT: Ladies and gentlemen, please disregard the line of testimony. Please go into the jury room.

(Whereupon the jury retired from the courtroom).

THE COURT: You have violated a direct order of the Court not to bring up the tapes at this time.

On the record before, right here on the transcript, you absolutely deliberately disobeyed an order. I'm going to fine you $5,000 in that violation of my order. It is contempt of court.

*      *      *      *      *      *

Rubinstein moved for reconsideration of the contempt order. On rehearing, the court filed the contempt order, adding the creative proviso that Rubinstein could purge the order by giving $5000 to Brooklyn Law School. Order of Judge Spencer Williams of October 15, 1992 ("October 15 Order"), at 3–4.

## DISCUSSION

### I. Propriety of the Contempt Finding

■ A judge is empowered to issue a summary criminal contempt order under 18 U.S.C. § 401 (1982), and Rule 42(a) of the Federal Rules of Criminal Procedure regulates this power. In order to warrant a contempt finding,

the contemnor's conduct must constitute misbehavior which rises to the level of an obstruction of and an imminent threat to the administration of justice, and it must be accompanied by the intention on the part of the contemnor to obstruct, disrupt or interfere with the administration of justice.

*In re Williams,* 509 F.2d 949, 960 (2d Cir. 1975) (citing *Eaton v. City of Tulsa,* 415 U.S. 697, 94 S.Ct. 1228, 39 L.Ed.2d 693 (1974)). Where a judge has directed an attorney not to discuss certain issues, the order must be sufficiently clear that an attorney can discern what conduct falls within its scope. *See United States v. Giovanelli,* 897 F.2d 1227, 1231 (2d Cir.), *cert. denied,* 498 U.S. 822, 111 S.Ct. 72, 112 L.Ed.2d 46 (1990).

The order in this case was clear to Rubinstein. In the sidebar referred to above, Rubinstein explained that he was not talking about the lease for the 177th Street property, and that he wanted to question Palese about videotapes. The court sustained the government's objection that questions about the videotapes were beyond the scope of direct as well; by then, it should have been clear to Rubinstein that the order not to bring up matters beyond the scope of direct included any discussion about the tapes. Even if Rubinstein felt that the order was unreason-

able, it was nonetheless clear; any objection he had to the order simply should have been preserved on the record, rather than voiced by continuing with the offending line of questions. *See Maness v. Meyers,* 419 U.S. 449, 458–60, 95 S.Ct. 584, 590–92, 42 L.Ed.2d 574 (1975).

The judge had sufficient evidence before him to find that Rubinstein had the requisite intent to violate the court's order; Rubinstein's behavior did not merely constitute "overzealous cross-examination" as he claims. Rubinstein cross examined the witness for far longer than the prosecution, on issues unrelated to direct examination. Despite Judge Williams's offer to allow Rubinstein to call Palese back during presentation of his own case, Rubinstein continued to question the witness about the videotapes. Tr. 65.

Rubinstein argues that his behavior did not constitute an "imminent threat to the administration of justice." He contrasts his own behavior to that of the defense attorney in *United States v. Lumumba,* 794 F.2d 806 (2d Cir.), *cert. denied,* 479 U.S. 855, 107 S.Ct. 192, 93 L.Ed.2d 125 (1986), who admittedly acted more often and more severely in testing the judge's patience. The defense attorney in *Lumumba* at one time called the judge a "disgusting bigoted practical joke," and at another, when he was dissatisfied about a particular ruling, stated that "we would look for a better performance from the court in the future." *See id.* 794 F.2d at 813.

However, the fact that Rubinstein's behavior did not consist of calling the judge names, or making loud disturbances, does not mean that he is free from a contempt finding. The simple fact is that Rubinstein disturbed the orderliness of the proceedings, in defiance of a clear court order.

### II. Excessiveness of the Fine

■ Although the lack of physical disturbance in court does not vitiate the contempt finding, it suggests that the fine may have been excessive. As one court has pointed out, "the punishment imposed should bear

---

THE COURT I've never had an order disobeyed so directly, so blatantly in my court in my twenty years on the bench. I've never seen it done before.

It was a specific order. Don't bring it up now; if you want to bring it up as part of your case, we'll get the witness back.
Tr. 65–66.

some reasonable relation to the nature and *gravity* of the contumacious conduct." *United States v. Conole*, 365 F.2d 306, 308 (3d Cir.1966) (emphasis added), *cert. denied*, 385 U.S. 1025, 87 S.Ct. 743, 17 L.Ed.2d 673 (1967).

In *United States v. Ruggiero*, 835 F.2d 443, 446 (2d Cir.1987), we reduced a fine from $10,000 to $2,000, although the behavior of the criminal defendant was far more disruptive than Rubinstein's. The defendant had repeatedly interrupted the judge, purporting to assert his constitutional rights, when in fact all he did was cause disturbances to the court. The judge fined him $10,000. *Id.* at 445 n. 2. Noting that the sanction was the first imposed at the trial, we reduced the fine, exercising our "special responsibility" to ensure that the contempt power not be abused. *See id.* at 446 (quoting *United States v. Gracia*, 755 F.2d 984, 989 (2d Cir.1985)).

Although there is sufficient evidence to uphold the contempt finding, we reduce the fine for several reasons. Rubinstein was not physically disruptive; the judge praised him later for his overall conduct, *see* October 15 Order at 3; and this was the first (and only) sanction imposed in the case. *See Ruggiero*, 835 F.2d at 446. We exercise our "special responsibility" by reducing the fine to $500, in order to ensure that the fine is commensurate with the gravity of the behavior.

### III. The Purgation Provision

 The government concedes that the purgation provision should be vacated, because it is inappropriate under 18 U.S.C. § 401. Criminal contempt orders are punitive in nature, whereas a purgation provision applies more properly to a civil contempt finding. It allows the offender to comply with a court order. In this case, compliance was no longer possible since the offending conduct was long past, and the provision was unhelpful. *See In re Irving*, 600 F.2d 1027, 1031–32 (2d Cir.), *cert. denied*, 444 U.S. 866, 100 S.Ct. 137, 62 L.Ed.2d 89 (1979).

While we admire Judge Williams's philanthropic inclination, the concept of using contempt as a vehicle to benefit a third party completely unrelated to the litigation is one

that seriously diverges from the principle behind the contempt power. *See In re Kave*, 760 F.2d 343, 352 (1st Cir.1985) (recognizing "the general rule that a punitive fine is paid into the coffers of a court and a civil fine is paid to the aggrieved party to compensate for its losses"). Therefore, with apologies to Brooklyn Law School, the purgation provision must be stricken.

### CONCLUSION

The district court's order holding petitioner in contempt is hereby affirmed, but the fine is reduced to $500, and the purgation provision is vacated.