# United States Court of Appeals

## For the First Circuit

No. 01-1891

UNITED STATES OF AMERICA,

Appellee,

v.

DALE CHESTER BROWNE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Boudin, Chief Judge,

Howard, Circuit Judge,

and Shadur,[*] Senior District Judge.

Raymond J. Rigat, by appointment of the court, and Gilbride & Rigat on brief for appellant.
Rose A. Briceño, Department of Justice, Criminal Division, Narcotic and Dangerous Drug Section, on brief for the United States.

January 29, 2003

---

[*]Of the Northern District of Illinois, sitting by designation.

**BOUDIN**, <u>Chief Judge</u>.  Dale Chester Browne, a citizen of St. Kitts, was indicted along with a number of other defendants in federal district court in Puerto Rico.  By a superseding indictment filed on April 26, 2000, the grand jury charged Browne in five counts with conspiracy to possess cocaine with intent to distribute, bank fraud, two deliveries of a controlled substance, and conspiracy to engage in money laundering.  21 U.S.C §§ 841(a)(1), 846 (2000); 18 U.S.C. § 1344 (2000); 18 U.S.C. § 1956(a)(1)(B)(i)-(ii), (h) (2000).  In substance, Browne was charged with participating over an extended period in a large-scale cocaine importation scheme and in the concealment of proceeds.

On November 20, 2000, Browne pled guilty to the two conspiracy counts--the drug conspiracy and the money laundering conspiracy--pursuant to a plea agreement. Under the agreement, the remaining counts were dismissed and the parties stipulated to the quantity of cocaine and laundered funds and to various upward and downward adjustments.  The guilty plea encompassed the usual proceedings including Browne's agreement to facts establishing a basis for the plea.  <u>See</u> Fed. R. Crim. P. 11; <u>United States</u> v. <u>Lopez-Pineda</u>, 55 F.3d 693, 695-96 (1st Cir.), <u>cert. denied</u>, 516 U.S. 980 (1995).  Sentencing was set for May 18, 2001.

On March 23, 2001, four months after the guilty plea and two months before sentencing, Browne's counsel filed a written motion on his behalf to withdraw his guilty plea.  The motion

-2-

contained a melange of general claims unsupported by facts (e.g., defendant "was not afforded adequate opportunity to prepare for trial, and/or was denied adequate opportunity to obtain necessary information . . . "). Included among them, also without any details, was the assertion that the government "discriminated against [Browne] during negotiations for being black, and [a] citizen of another country."

The government responded by denying "in the strongest terms possible" that Browne's race or citizenship entered into its plea negotiations but pointed out that the lack of detail in Browne's motion made it impossible to offer a more detailed response. The district court denied Browne's motion without further proceedings. In its detailed opinion, the court noted inter alia that Browne's motion offered nothing but "unsupported allegations," that the plea transcript showed that his plea had been fully discussed and was voluntary, and that the delay in making the motion counted against it.

At the sentencing hearing on May 18, 2001, the district court sentenced Browne to 22 years' imprisonment, consistent with the agreed-to facts in the plea agreement. As the judge closed the hearing, Browne stated to the judge: "You violate the rights. You violate the rights here." The judge warned Browne that he might be subjecting himself to contempt if he continued. Then, apparently

as the marshal was leading Browne out of the courtroom, Browne said: "Son of a bitch, damn it."

The judge then directed the marshal to bring Browne back in court. Browne's counsel asked, "may we approach the bench?" In response, the judge stated:

> No sir, you may not approach the bench. Bring the defendant back to court. Let the record reflect that after we finished his sentence, the defendant was handcuffed and as he was being led out by the Marshals, he started saying out loud to everybody in the courtroom, that his rights were being violated. At that time, the court did not take any action. Nevertheless, when he was being led from the door of this courtroom to the holding pens which are across the hallway, he started saying that I am a son of a bitch and I am not going to stand for that from you or anybody else. We are a country of law and order. You have your rights. You can continue with the appeal if you are not satisfied with the sentence I imposed, but I am not going to tolerate that. Having committed a crime in my presence, a criminal contempt for having called me a son of a bitch, you are hereby ordered and you are hereby detained and you are hereby sentenced to an additional six months in jail consecutive to the two hundred and sixty-four months that I just sentenced you.

Browne has now appealed from the judgment of conviction and sentence, urging that the district court erred in not affording him an evidentiary hearing on his motion to withdraw his guilty plea and that the contempt sentence should be vacated for two reasons: that the district court erred in finding Browne in contempt and that he was denied his alleged due process right to

-4-

allocute in the contempt proceeding.  We consider first the motion to withdraw and then the contempt proceeding.

A guilty plea entered after a full Rule 11 colloquy cannot be withdrawn at will but only with the district court's permission upon the showing of a "fair and just reason" for withdrawal.  Fed. R. Crim. P. 32(e).  The cases provide criteria to be considered, e.g., United States v. Marrero-Rivera, 124 F.3d 342, 347 (1st Cir. 1997), but no discussion of them is required here because Browne's appellate claim is narrowly focused: he claims that the district court should have granted him an evidentiary hearing on his claim of discrimination on the part of the prosecutor.

We will assume arguendo, as we have in an earlier case, that newly discovered racial discrimination by the prosecutor in negotiating a guilty plea might well furnish a "fair and just reason" for a defendant to withdraw his prior guilty plea before sentencing.  See United States v. Bernal-Rojas, 933 F.2d 97, 99 (1st Cir. 1991).  And, although this is very doubtful, we will also assume for argument's sake that Browne did in fact ask for an evidentiary hearing on his discrimination charge.[1]  The latter

_____

[1]Browne's written motion asked, if the plea withdrawal were not summarily granted, for a "hearing," which depending on context might or might not alert the judge that Browne was asking for a chance to present evidence. Here, because Browne said nothing specific about testimony, documents or facts to be adduced, the request could reasonably have been understood as requesting only oral argument.

assumption affects only the choice between plenary and plain error review on appeal and, in this instance, there was no error under any standard.

Ordinarily, the grant or denial of an evidentiary hearing in a plea withdrawal proceeding is said to be confided to the discretion of the trial judge and can be overturned only for "abuse," United States v. Winston, 34 F.3d 574, 578 (7th Cir. 1994) (or, if no request was made, only for "plain error," a yet more demanding multi-part test, see United States v. Olano, 507 U.S. 725, 732 (1993)). In practice, one would expect the judge to take evidence in some form--although not necessarily through a full-blown hearing--if there were an adequate tender and if the facts to be adduced were critical to the proper disposition of the motion. In this case, the tender was not even arguably adequate to warrant a hearing, let alone to make its denial an abuse of discretion or plain error.

At best, Browne's motion hints that after his guilty plea he may have learned that the government did not prosecute certain persons mentioned as present during some transactions involved in Browne's drug conspiracy. Nothing else of even a vaguely factual character appears in his motion to explain the basis for his charge of racial or nationality discrimination. Nothing whatsoever is said as to what specifically Browne expected to prove at any

evidentiary hearing, who would be called, what areas would be covered, and why such a hearing might be expected to be productive.

This is so far from being an adequate basis for demanding an evidentiary proceeding that no fine lines need be drawn. No matter how serious the general charge, an evidentiary hearing is warranted only if it has some prospect of being productive. United States v. Isom, 85 F.3d 831, 838 (1st Cir. 1996). In this case, proof that the government did not prosecute some individuals who had been mentioned by one witness or other would prove nothing whatsoever as to racial discrimination. Beyond that, Browne's request was simply a fishing expedition.

This brings us to the contempt issues. By statute, a federal court has authority to punish by fine or imprisonment several broadly framed classes of conduct as contempt of court; one of these embraces "[m]isbehavior of any person in its presence or so near thereto as to obstruct the administration of justice." 18 U.S.C. § 401(1) (2000). A jury trial is required if the sentence is for more than six months, see Codispoti v. Pennsylvania, 418 U.S. 506, 511-12 (1974), but that limitation does not control this case. And contempt may be punished "summarily" where it occurs "in the actual presence of the court." Fed. R. Crim. P. 42(a).

"Summarily," in this context, means without delaying to provide for formal charges or a formal trial. Nevertheless, Rule 42(a) dictates certain procedures, in particular, a requirement for

-7-

fact-findings by the judge, not necessarily to the exclusion of other requirements not listed in the rule. Although appellate review of summary contempt orders is sometimes described as for "abuse of discretion," a more exact statement is that factual findings are reviewable for clear error, pure questions of law de novo, and mixed questions by a less certain standard. United States v. Winter, 70 F.3d 655, 655, 659 (1st Cir. 1995), cert. denied, 517 U.S. 1126 (1996).

In this case, Browne offers both substantive and procedural objections to his conviction. Browne's main substantive objection is that his conduct did not constitute an "obstruction of justice" within the meaning of section 401(1) because there is no showing or reasonable inference that judicial proceedings were actually disrupted. Browne argues that he had already been sentenced and was being led out of the courtroom when he uttered his brief remark. He suggests that the judge, irritated by counsel's efforts to renew the already-decided motion to withdraw Browne's guilty plea, overreacted.

Section 401(1) does not say clearly that an obstruction of justice is required. Read literally, the statute could be understood to allow the court to punish as contempt "[m]isbehavior in its presence" or--as a separate class of conduct--"misbehavior" that is "so near" to the presence of the court "as to obstruct the administration of justice." This would not be an irrational

-8-

reading and cursing in court could pretty easily be described as "misbehavior."  No cases on this issue have been cited to us.

However, we will assume for present purposes (the government does not argue otherwise) that an obstruction was required but also that the remark was in "the presence of the court" even if it occurred in the hallway between the court and holding cell.  "Presence" is not required by section 401(1), given its "near to" alternative; but it is required for summary contempt under Rule 42.  The latter provision aims at cases where the judge has witnessed the conduct himself and does not need independent proof.  Here, the judge's remarks confirm that he did hear, and probably see, the event.

Is what happened an "obstruction of justice"?  Certainly this would be a dubious case for a criminal prosecution under the federal obstruction of justice statute.  That provision is commonly understood to embody a specific intent requirement, United States v. Thomas, 916 F.2d 647, 651, (11th Cir. 1990), and nothing in this record suggests such an intent.  Yet we think that a more prosaic reading of section 401(1) is warranted by its narrow subject.  Directed as it is to conduct within the courthouse, we have no trouble reading it to embrace any deliberate misconduct that may foreseeably disrupt or interfere with court proceedings, whether or not that was the subjective intent of the contemnor.  See Cooke v.

-9-

<u>United States</u>, 267 U.S. 517, 534 (1925) (giving maintenance of order as the primary purpose of contempt statute).

One must appreciate that courtrooms, especially in criminal cases, are theaters of extreme emotion--stoked by the facts of the alleged crimes, the tensions of striving lawyers and hostile cross examination, and the fearsome stakes. Every trial judge knows how easy it is for matters to get out of hand. Indeed, the black robe, the call "all rise," and the deference exacted by judges have their main warrant in the need for order. By its tendency to undermine order, a party's deliberate cursing of a judge in open court can depending on the circumstances readily be viewed as obstructive. <u>Gordon</u> v. <u>United States</u>, 592 F.2d. 1215, 1217 (1st Cir. 1979), <u>cert. denied</u> 441 U.S. 912 (1979).

Whether this label should be applied on particular facts is what is commonly called a mixed question or, less colloquially, a question of law application. On such questions, the judgment of the district judge is often but not always accorded deference; whether, and how much, depends in part on policy considerations applicable to the class of cases. <u>E.g.</u>, <u>Ornelas</u> v. <u>United States</u>, 517 U.S. 690, 697-99 (1996); <u>In re Howard</u>, 996 F.2d 1320, 1327-28 (1st Cir. 1993). In summary contempt, it is common to give considerable (although not conclusive) deference to the judge's on-the-scene assessment. <u>United States</u> v. <u>Allen</u>, 397 U.S. 337, 343 (1970). So measured, we think the district court's assessment is

-10-

not unreasonable, given the district court's specific finding that the curse was directed at the judge.

On this record, we could not ourselves say whether the curse was directed at the judge, the prosecutor, defense counsel or was directed instead at a hostile universe. The prosecutor suggests that a subsequent remark by Browne _after_ the contempt finding--"You think you are God? God is in heaven"--shows that the curse must also have been directed at the judge, but the logic of this argument escapes us. Although the undirected character of the words themselves and the fact that they were spoken on the way out of the courtroom might perhaps suggest the absence of a personal attack, the district judge was present when the curse was rendered and was surely in the best position to assess its aim. His assessment, assuming it was not impaired by procedural error, would not be "clearly erroneous."

This brings us to Browne's two procedural arguments. One is that he should have been given an opportunity to defend himself before the contempt finding was rendered; the other, that he should have had an opportunity personally to address the court before punishment for the contempt was imposed. "Allocution" is the technical term for the latter. The term is sometimes used more loosely to cover any defense offered by the defendant himself. The subject of procedural rights in summary contempt is both important

-11-

and, because it does not lend itself to categorical rules, difficult.

The reason for the difficulty--indeed, the usual reason in law why rules are hard to devise--is the great range of conduct and situations involved in the category of conduct. Misbehavior in or near the courtroom can involve words, disruptive behavior or an assault by a defendant, refusal of a witness to answer questions, a lawyer's persistence in objections or arguments after warnings, and demonstrations by spectators--among many other possibilities. Sometimes the contempt is obvious, an emergency or both; in other cases the violation may be debatable, depend upon unknown facts, and present no need for urgent action. Yet in all these cases, the conduct may arguably fall within section 401(1) and Rule 42.

Here, the statute and rule provide little in the way of process; the case law precedents are inconclusive; and although clear standards have been urged, notably in <u>ABA Standards for Criminal Justice</u> 6-53 (2d ed. 1980)), they do not have the force of law. Still, nothing prevents us from saying that a judge in a summary contempt proceeding should afford such procedural protection as is <u>reasonable in the circumstances</u>. This seems to us a suitable gloss on the statute designed to provide fair administration and ward off constitutional challenge.

A reasonableness standard depends on circumstance but this does not prevent generalization. Obvious contempts surely

need less opportunity for defense than debatable ones; severe summary punishments (like six months in prison for an attempted assault) call for more of a chance to allocute than token ones (e.g., a $100 fine for a late appearance). A true emergency may warrant a finding of contempt, and in some cases even punishment, on the spot with no opportunity to argue. What is reasonable in the way of process in a given case is itself a judgment call as to which the trial judge is entitled to some deference; but the deference is not unlimited.

In this instance, we think that the district judge should have given the defendant's counsel an opportunity on the spot to argue that the remark was not directed at the judge or, even if this were conceded, an opportunity on the spot for the defendant to express remorse or offer any other mitigating circumstance. In our view, the target of Browne's remark is not so clearly obvious on the record as to make the former a hopeless waste of time; and the punishment--six months in jail for a single insult by a defendant under severe tension--is sufficiently tough as to be susceptible to reasoned allocution. As no trial was ongoing at the time, this brief delay in assessing and punishing the conduct would not have been costly.

The need for courtroom discipline is so substantial that we intervene here only with hesitation. A contemnor who commits a clear, easily assessed contempt and is given a routine sanction

will likely get little help on appeal even if no process is afforded--although a trial judge may often sensibly provide more than an appellate court would require.  It is only the unusual circumstances of this case--the unclear record, the maximum allowable punishment--that make us conclude that an opportunity for the defendant to clarify the remark and ask for a lesser punishment should have been provided.

Trial judges have as difficult a task as exists in the world of law.  In the heat of the moment, anyone on this panel might have acted as did the able and respected trial judge in this case.  But one of the advantages of appeals is the chance for cool reflection.  It is within the district court's discretion whether to pursue this matter on remand; if it is pursued, we have no doubt that the district judge will weigh fairly whatever the defendant or his counsel may have to say.

The denial of the motion to allow withdrawal of the guilty plea is sustained and the judgment of conviction is <u>affirmed</u>, together with the original sentence for the indicted conduct.  The judgment of contempt and the additional six-month sentence is <u>vacated</u> and that matter is <u>remanded</u> for such proceedings consistent with this opinion as the district court may choose to direct.

<u>It is so ordered</u>.

-14-