DORAL PRODUCE CORP., Plaintiff–
Counter–Defendant–Appellee,

v.

PAUL STEINBERG ASSOC., INC.,
Defendant–Counter–Claimant,

Mark C.H. Mandell, Appellant.

Docket No. 02–9264.

United States Court of Appeals,
Second Circuit.

Argued: June 19, 2003.

Decided: Oct. 15, 2003.

John D.B. Lewis, Gary E. Divis, New York, N.Y. (on the brief), for Appellant.

Before: WALKER, Chief Judge, and LEVAL and KATZMANN, Circuit Judges.

LEVAL and KATZMANN, Circuit Judges.

The appellant, Mark Mandell, Esq., an attorney who represented defendant Paul Steinberg Associates, Inc. in a nonjury trial conducted in the United States District Court for the Southern District of New York (Motley, J.), appeals from the district court's ruling, summarily holding him in contempt and imposing a fine of $500, for asking a question which the court believed to be in contravention of its rulings.

We reverse the contempt conviction, for two reasons, one substantive, the other procedural. First, because willfulness is an essential element of criminal contempt, one may not be held in contempt for violation of a court's orders unless the order was of sufficient clarity to give the individual clear warning that the conduct is prohibited. In this case, no such clear warning was given. The court's prior rulings did not clearly communicate that the question Mandell asked would not be allowed. The second reason is a defect of process. The court held Mandell in contempt of court without offering him notice or a meaningful opportunity to be heard. Recognizing that there are circumstances in which contempt may be imposed without affording the contemnor an opportunity to speak in his defense, no such justifying circumstances were present here.

## BACKGROUND

The incident arose as follows: During a bench trial, at the conclusion of the plaintiff's case, which sought to set aside a contract between the parties on the ground that it had been procured by the defendant's alleged fraudulent concealment, Mandell moved on defendant's behalf for judgment as a matter of law, arguing that the plaintiff had failed to show fraud. In the course of his argument attempting to show that the plaintiff's contention of fraud was a contrivance, Mandell asserted that, immediately following the deposition of Leo Fernandez, the principal of the plaintiff company, the plaintiff had amended its complaint to change its theory of fraud. He urged the court to read the original complaint. The court responded, "There must be a reason why we allow amended complaints and inconsistent theories, isn't that so?" The court denied the motion and the trial continued.

Later, during the direct examination of Steve Schnur, an employee of the defendant, Mandell showed Schnur a copy of the defendant's counterclaim, elicited that Schnur had gone over it with Mandell, and asked whether he had read it. The court sustained an objection by plaintiff's counsel, explaining, "Anything in the answer or the complaint of course is superseded by the pretrial order." Mandell responded,

"Your Honor, I'm sorry, I didn't understand."

During Mandell's direct examination of the defendant's principal Paul Steinberg, Mandell handed Steinberg a copy of the answer and counterclaims. Plaintiff objected and the Court said, "Yes, we've been over there. The pretrial order supersedes both."

Finally, during the defendant's examination of Fernandez, who had signed and verified the original complaint on plaintiff's behalf, Mandell asked him, "Now, sir, you made a statement in the verified complaint that was served in this case that all the dealings with Steinberg were handled by yourself, isn't that true?" Plaintiff's counsel objected on the ground that the original complaint had been superseded by an amended pleading. Without permitting Mandell to respond, the court said, "Just a moment. Mr. Mandell, ... you're fined $500 for contempt of court for asking that question, because I have already ruled several times that the pretrial order superseded the complaint." The court directed Mr. Mandell to pay the fine "by 5 o'clock Friday." Only then, after he had been held in contempt and sentenced, did the court permit Mandell to "make a record." He stated briefly that his question was based on the witness's sworn statement and was directed at the witness's credibility and not the successive versions of the pleadings. The court responded, "Are you finished? All right. Let's go on. $500.... Payable to the Clerk of the Court by 5 o'clock on Friday."

## DISCUSSION

■ A district court judge has the power to hold an individual in criminal contempt and to impose corresponding fines. 18 U.S.C. § 401 ("A court of the United States shall have power to punish by fine ... at its discretion, such contempt of its authority, [including] ... (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."). A federal court has the power also, in appropriate circumstances, see *Harris v. United States*, 382 U.S. 162, 165, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965), to punish "summarily" for contempt under Fed.R.Crim.P. 42(a) (since renumbered Rule 42(b)).[1] Contempt orders are reviewed on appeal for abuse of discretion, *United States v. Wilson*, 421 U.S. 309, 319, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975), "but because of the formidable and potentially harmful nature of the contempt power, this review is more rigorous than in other contexts." *City of New York v. Local 28, Sheet Metal Workers' Int'l Ass'n*, 170 F.3d 279, 283 (2d Cir.1999).

### 1. The need for a clear order.

■ The necessary elements of criminal contempt have not been met in this case. An individual must have fair notice of the court's commands before being punished for failing to comply. Criminal contempt is punishable only where it is "willful," *United States v. Lynch*, 162 F.3d 732, 734 n. 2 (2d Cir.1998), that is, where it is committed with "a specific intent to consciously disregard an order of the court," or where the defendant "knows or should reasonably be aware" he or she is in the wrong, *id* at 735. (internal quotation marks and citations omitted). Thus, if the defendant's alleged disobedience is consistent with a reasonable interpretation of the court's order (albeit an interpretation dif-

---

**1.** Since the time of the events that led to this appeal, Rule 42 of the Federal Rules of Criminal Procedure has been revised. This revision made minor, non-substantive changes and reversed the order of the two sections of the rule. The rule now provides for the summary procedure in section 42(b) and more extended procedures in section 42(a).

ferent from the one applied by the court imposing the contempt), and there is no other evidence of willfulness, we would be unable to affirm the conviction. Put another way, "[w]here a judge has directed an attorney not to discuss certain issues, the order must be sufficiently clear that an attorney can discern what conduct falls within its scope." *United States v. Allocco*, 994 F.2d 82, 85 (2d Cir.1993) (citations omitted).

■ The district court's rulings did not give Mandell fair notice that his question was prohibited. The question Mandell asked, which formed the basis of the contempt, did not violate the court's previous instructions or rulings, as Mandell might reasonably have understood them. As the signatory of the verified complaint, the witness Fernandez had made a *statement* under oath about a matter within his knowledge. ("Now, sir, you made a statement in the complaint ... that all [plaintiff's] dealings with [the defendant] were handled by yourself, isn't that true?") Mandell's question sought to have the witness affirm his statement for the purpose of impeaching him by showing inconsistencies between the statement and other evidence proffered by the plaintiff. The fact that the statement used for impeachment was made in the witness's affirmation of the complaint, as opposed to being made in an affidavit or deposition, or some other document, was of no moment for Mandell's impeachment objective.

The court's three prior rulings, described above, in no way suggested that Mandell was forbidden to impeach a witness by using a statement the witness made in swearing to the original complaint. The court's only discussion of the original complaint in the course of these rulings was to explain that disparities between the original and amended complaints did not furnish a reason to dismiss or discredit the amended complaint because parties are permitted by law to amend pleadings and to plead inconsistent theories. That ruling in no way suggested any impropriety in counsel's undertaking to impeach as he did. Nor did the court's two earlier rulings regarding the admissibility of the pleadings suggest that the court would not allow such use of a witness's own statement contained in a pleading. The admonition that "[a]nything in the answer or the complaint ... is superseded by the pretrial order" communicated only that, because superseded by the pretrial order, the pleadings no longer defined the issues in controversy. Because Mandell could not reasonably have known on the basis of the court's prior rulings that his question would not be permitted, he could not be held in contempt for putting the question.

2. *The contemnor's right to be heard in his defense*

■ Mandell received neither notice that the court was contemplating holding him in contempt, nor opportunity to speak in his defense until after the court had held him in contempt and imposed sentence. And when the court subsequently allowed him to "make a record," the opportunity then afforded him to defend was not meaningful. It was clear from the court's treatment of Mandell's subsequent remarks that, so far as the court was concerned, the contempt adjudication was finished business, and the remarks Mandell was then permitted simply allowed him to make a record for his appeal. When Mandell explained why he believed his question did not violate any of the court's rulings, the only response the court made was, "Are you finished? All right. Let's go on," (and to repeat the amount of the fine and the time by which it was to be paid). In view of all the particular circumstances of this case, the denial of any meaningful

opportunity for Mandell to speak in his defense precluded holding him in contempt, even in a summary proceeding.

A line of decisions of the Supreme Court, our court, and other circuits has consistently taught that summary punishment without an opportunity even to speak in one's defense is regarded with disfavor, see e.g., *Sacher v. United States,* 343 U.S. 1, 8, 72 S.Ct. 451, 96 L.Ed. 717 (1952), and that, absent persuasive justification for the denial, a contemnor should be allowed to speak in his defense, notwithstanding the court's employment of summary procedure.

In *Groppi v. Leslie,* 404 U.S. 496, 92 S.Ct. 582, 30 L.Ed.2d 632 (1972), the Supreme Court addressed the right of a contemnor to speak in his defense in the course of a summary contempt adjudication. The defendant in that case was summarily punished by the legislature of Wisconsin for having "led a gathering of people which, by its presence on the floor of the Assembly during a regular meeting ... prevented the Assembly from conducting public business and performing its constitutional duty." *Id.* at 497, 92 S.Ct. 582 (internal quotation marks omitted). Two days after the event, without giving the defendant an opportunity to be heard in his defense, the legislature passed a resolution citing him for contempt and directing his confinement for a substantial time. Recognizing that legislatures are "not constituted to conduct full-scale trials or quasi-judicial proceedings," *id.* at 500, 92 S.Ct. 582, the Supreme Court nonetheless ruled that under the Due Process Clause of the Federal Constitution, the contemnor was entitled to notice and the opportunity to answer. *Id.* at 500–502, 92 S.Ct. 582. The court explained, "[W]e have stated time and again that reasonable notice of a charge and an opportunity to be heard in defense before punishment

is imposed are basic in our system of jurisprudence." *Id.* at 502, 92 S.Ct. 582 (citations and internal quotation marks omitted). The flaw in the procedure employed was not that it was summary. To the contrary, the court implicitly approved the employment of a summary procedure. The flaw was rather that it was *excessively* summary in that it denied the contemnor even the "basic" right to be heard in defense.

A similar issue arose in *Taylor v. Hayes,* 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974). Petitioner was counsel for a criminal defendant charged in the state of Kentucky with the murder of two police officers. During the defendant's trial for murder in state court, on numerous occasions the trial judge warned petitioner that his conduct was contumacious. Immediately following the conclusion of the trial, the judge, without allowing the defendant to speak in his defense, adjudicated him in contempt and sentenced him to confinement. The Supreme Court held that the "procedure does not square with the Due Process Clause of the Fourteenth Amendment." *Id.* at 497, 94 S.Ct. 2697. The Court reiterated the statement from *Groppi* that "reasonable notice of a charge and an opportunity to be heard in defense before punishment is imposed are basic in our system of jurisprudence." *Id.* at 498, 92 S.Ct. 582 (citations and internal quotation marks omitted). Stressing that the events "occurred before the judge's own eye," the Court made clear it was not saying that a full-scale trial was required. *Id.* at 499, 92 S.Ct. 582. The point was merely that "a contemnor is entitled to the elementary due process protections of reasonable notice of the specific charges and opportunity to be heard in his own behalf .... [absent] justifications [that] may sometimes necessitate immediate imposition of summary punishment during trial to maintain order in the courtroom and the

integrity of the trial process in the face of an actual obstruction of justice." *Id.* at 500 n. 9, 92 S.Ct. 582 (citations and internal quotation marks omitted). The trial judge's delay in resolving the contempt until after the trial dispelled the notion that considerations of urgency justified dispensing with the right of the accused to speak in his defense. *Id.* at 497, 92 S.Ct. 582.

Turning to our precedents, it is useful to begin with a particularly instructive decision issued prior to the Supreme Court opinions reviewed above. *See United States v. Galante,* 298 F.2d 72 (2d Cir. 1962). Immediately following a lengthy narcotics conspiracy trial, marked by contumacious outbursts by the defendant Mirra and others, the court filed a certificate in accordance with then Rule 42(a), specifying Mirra's contumacy, attesting that the acts were committed in the court's presence (as required by the Rule), summarily finding him in contempt, and sentencing him to twenty days imprisonment. We affirmed the conviction, rejecting the defendant's contention that the six-week delay between the contumacious acts and the imposition of the sanction at the end of trial eliminated urgency and required the court to proceed under the extended procedure of Rule 42(b), rather than the summary procedure of Rule 42(a).

Judge Friendly, concurring in part and dissenting in part on a ground the appellant had not raised, agreed with the majority's approval of the use of Rule 42(a)'s summary procedure, but nonetheless argued that the contempt conviction could not stand because of the judge's failure "to accord Mirra any opportunity to speak in explanation or extenuation, either in person or by counsel." *Id.* at 76. Citing ancient British and United States Supreme Court authority, Judge Friendly asserted that "[a]udi alteram partem[2] is basic to our law[.] ... [I]t has long been a received rule in the administration of justice, that no one is to be punished ... unless he has had an opportunity of being heard." *Id.* at 77 (internal quotation marks omitted). Judge Friendly recognized that "[e]ven a right so basic as that to speak in one's own defense must sometimes yield ... to the overriding necessities of maintaining order in the court-room or of protecting officers of the court," *id.* at 78, but that such necessity was not present where the court had waited for weeks after the contumacious conduct to impose the conviction. His opinion emphasized that use of the "summary" procedure authorized by Rule 42(a) was in no way incompatible with the defendant's right to speak in his defense. " 'Summary Disposition' and 'summarily' mean only that certain usual procedural requirements may be dispensed with, not that [the] basic right[ to speak in one's defense] can be sacrificed." *Id.*

The fact that Judge Friendly's words were uttered in a dissent does not mean that they lack precedential value for our case. The majority opinion did not disagree with the principles of Judge Friendly's dissent. To the contrary, it acknowledged that "the reasons for the rule referred to by Judge Friendly may in a proper case require the court to interrogate the defendant personally." *Id.* at 76. The majority merely concluded for several reasons that the failure was not "reversible error" in the particular circumstances.[3]

<hr>

**2.** "Hear the other side .... No man should be condemned unheard." *Black's Law Dictionary* 166 (4th ed.1951).

**3.** The circumstances that led the majority to conclude that the failure was not "reversible" error included that the defendant had neither asked to address the court nor raised the

The authority of Judge Friendly's *Galante* opinion is further bolstered by the Supreme Court's subsequent decision in *Taylor* and our decision in *United States v. Lumumba*, 741 F.2d 12 (2d Cir.1984), which undermined the *Galante* majority's ruling and expressed views very similar to those of Judge Friendly on the importance of according a contemnor the opportunity to speak in his defense. In deciding *Lumumba*, we followed *Taylor* and restated some of the principles enunciated in the *Galante* dissent. The contemnor in *Lumumba*, an attorney representing a defendant at trial, was summarily held in contempt after the end of the trial without opportunity to speak in his defense. Although his sentence was later imposed by a second judge, who allowed the contemnor to address the court *as to his sentence,* the sentencing judge did not reopen the question of the finding of contempt. In the end, the contemnor was never given an opportunity to address the charges against him. Finding the case "nearly indistinguishable" from *Taylor,* we vacated the conviction and remanded for new proceedings at which the attorney would "be allowed a reasonable opportunity to defend or explain his actions or present arguments in mitigation." *Id.* at 17.

Also highly persuasive on this question is a recent decision of the First Circuit, *United States v. Browne*, 318 F.3d 261 (1st Cir.2003) (Boudin, C.J.). After pleading guilty to a large-scale drug conspiracy, Browne was sentenced to a substantial term. As he was being removed by the marshal from the courtroom, he was heard by the judge to say, "Son of a bitch, damn it." *Id.* at 263. Refusing Browne's counsel's request to speak on his behalf, and

without offering Browne the chance to speak, the judge summarily found him in contempt under Rule 42(a) and imposed an additional sentence.

The Court of Appeals found no fault with the use of the summary procedure. It nevertheless ruled that "a judge in a summary contempt proceeding should afford such procedural protection as is *reasonable in the circumstances.*" *Id.* at 267 (emphasis in original). In consideration of all the circumstances, the court ruled that the defendant should have been given the opportunity to speak. A part of the reason the court gave for the ruling was the uncertainty whether the defendant had acted with any contumacious intent. It was not clear that the defendant had directed the words "son of a bitch" at the judge; they might have been aimed at "the prosecutor, defense counsel or ... at a hostile universe." *Id.* at 266. The proper employment of Rule 42(a)'s summary procedure did not dispel the obligation to allow the defendant to be heard in his defense, at least absent sufficient justifying circumstances.

The Supreme Court's ruling in *United States v. Wilson,* 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975), and ours in *United States v. Martin–Trigona,* 759 F.2d 1017 (2d Cir.1985), are not inconsistent with this principle. In *Wilson,* a witness subpoenaed by the government to testify during trial refused after being ordered by the court to do so and after being warned that continued refusal would constitute contempt. The trial judge summarily adjudged the witness in contempt. Our court reversed the conviction, believing that, under the authority of *Harris v. United States,* 382 U.S. 162, 86 S.Ct. 352,

---

issue on appeal, the defendant's rudeness to the district court, the clear justification for the ruling, and the certainty that a statement in defense would not have altered the ruling.

Comparison suggests the majority would likely have agreed with Judge Friendly if the contempt had been imposed on our facts.

15 L.Ed.2d 240 (1965), the court was prohibited from following the summary procedure of Rule 42(a) because of the absence of exigent circumstances. *Wilson*, 421 U.S. at 313–14, 95 S.Ct. 1802. The Supreme Court reversed, reinstating the contempt. *Id.* at 319, 95 S.Ct. 1802. *Harris* had involved the refusal of a *grand jury* witness to testify. The Supreme Court there ruled that in a grand jury proceeding there was no exigency justifying use of Rule 42(a)'s summary proceedings. *Wilson* involved the refusal of a *trial* witness to testify. *Id.* at 311, 95 S.Ct. 1802. The difference was crucial in terms of exigency. The grand jury could "rather easily suspend action on any one [case], and turn to another while [more extended] proceedings under Rule 42(b)" were conducted. *Id.* at 318, 95 S.Ct. 1802. On the other hand, the refusal of a trial witness to testify when called to the stand "literally disrupted the progress of the trial and hence the orderly administration of justice." *Id.* at 316, 95 S.Ct. 1802 (citation omitted).

The Supreme Court in *Wilson* therefore found exigent circumstances and upheld the use of summary procedure under Rule 42(a). The question whether the contemnor should nonetheless have been allowed to speak in his defense was not raised or discussed. Even if we interpret the Supreme Court's silence on this question as implicitly ruling that the exigency of compelling the recalcitrant trial witness to testify was sufficient reason to dispense with his right to speak in his defense, that would not support denying Mandell the chance to speak. The facts were very different. The focus of the Supreme Court's ruling in *Wilson* was the urgency of compelling the recalcitrant witness to testify, lest progress of a trial be thwarted. In the case before us, there was no such urgency. Although we assume that persistence in questioning in flagrant violation of a clear evidentiary ruling can, under cer-

tain circumstances, obstruct the progress of a trial, Mandell's attempt to ask Fernandez to confirm the statement he had made in the original verified complaint did not do so.

In *Martin–Trigona*, 759 F.2d 1017, in circumstances very different from the present case, we upheld a summary contempt conviction in which the contemnor was not offered the opportunity to speak in his defense. *Martin–Trigona* was a truly exceptional case of a debtor-in-bankruptcy who for years and in various courts had engaged in relentless efforts to "frustrate and impede the orderly administration" of the bankruptcy estates. *Id.* at 1019. His campaign included efforts to "multiply and proliferate the litigation with resulting delay and expense," *id.*, refusal to appear for court-ordered examinations, *id.*, initiation of personal litigation against the judge and his wife in an effort to have the judge disqualified for conflict of interest, *id.* at 1020–21, repeated vexatious attempts to relitigate jurisdictional questions previously decided against him, *id.* at 1021, repeated insults of the judge and opposing counsel, and frequent interjection of religious bigotry into the proceedings, *id.* at 1021–24. In affirming the contempt conviction, our court found that "immediate action was essential to preserve the court's authority," *id.* at 1025, and "to prevent Martin–Trigona from reducing the hearing . . . .to a shambles." *Id.* Commenting that the judge "might in his discretion have given Martin–Trigona an opportunity to speak," *id.* at 1026 (internal quotation marks omitted), we nonetheless affirmed the conviction, after reviewing at length the extreme and abusive nature of the contemnor's provocations, noting the judge's personal observation of the contumacious conduct, the contemnor's "flagrant defiance of the person and presence of the judge," *id.* (internal quotation marks omit-

ted), and the fact that Martin–Trigona had not asked for an opportunity to speak. The affirmance of that conviction in such extreme circumstances in no way implies that in summary proceedings under Rule 42(a) the contemnor should not ordinarily, in the absence of persuasive justification, be afforded the opportunity to speak in defense before being adjudicated.

We note that, under our holdings, where a court imposes sanctions *less important* than a conviction for criminal contempt, the court is ordinarily obligated to give the person being sanctioned an opportunity to be heard in defense unless exceptional circumstances justify the denial. *See United States v. Seltzer*, 227 F.3d 36, 42–43 (2d Cir.2000) (imposition of monetary sanction by reason of attorney's late return to court after lunch break); *In re 60 East 80th Street Equities, Inc.*, 218 F.3d 109, 117–18 (2d Cir.2000) (imposition of monetary sanctions for vexatious multiplication of proceedings under 28 U.S.C. § 1927); *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir.1997) (imposition of attorneys fees and costs against counsel for failure to file timely amended complaint); *Satcorp Int'l Group v. China Nat'l Silk Import & Export Corp.*, 101 F.3d 3, 5–6 (2d Cir.1996) (imposition of monetary sanctions for failure to obey a discovery order pursuant to Rule 37 of the Federal Rules of Civil Procedure); *Rounseville v. Zahl*, 13 F.3d 625, 632–33 (2d Cir.1994) (imposition of monetary sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure). If a judge must give notice and an opportunity to be heard before imposing a relatively trivial civil sanction, the imposition of the far greater penalty of criminal contempt, which gives the contemnor a criminal record and may result in imprisonment for up to six months, should ordinarily require at least comparable levels of procedural safeguards.

Summarizing the authorities we have reviewed, we conclude that the governing principles are as follows: *Ordinarily*, a contemnor should not be held in contempt under the summary procedures of the former Rule 42(a) [now 42(b)], without affording him an opportunity to speak in his defense. As explained by the Supreme Court in *Groppi* and *Taylor*, the right to be heard in one's defense is a bedrock principle.

■ The opportunity given to the contemnor to speak in defense need not be extensive. *Taylor*, 418 U.S. at 498, 94 S.Ct. 2697. When the exigencies of the situation justify employment of the summary procedure permitted by Rule 42, see *Harris*, 382 U.S. at 164–65, 86 S.Ct. 352,[4] the court will have little time for procedural niceties. We have no doubt that had Mandell been offered the same brief opportunity to speak *before* the court found him in contempt, it would have been sufficient. But, although brief, the opportunity should nonetheless be meaningful. Without question, an opportunity to defend is more likely to be meaningful if it precedes the adjudication and the sentence. It stands to reason that once the court has made its ruling, the value of the opportunity to defend diminishes. Still, even after the ruling has been made, the opportunity to defend can be meaningful *if* the judge remains open to consider the merits of the defense advanced. *See Groppi*, 404 U.S. at 506 n. 11, 92 S.Ct. 582 (discussing *Sacher*, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952)), *Galante*, 298 F.2d at 78–79 (Friendly, J., concurring and dissenting) (same).

---

**4.** In view of our ruling, we need not consider the question whether, under the rule of *Harris*, the circumstances justified use of the summary procedure.

Furthermore, *ordinarily* does not mean always. The authorities recognize that the circumstances do not invariably justify affording the right to defend oneself. Judge Friendly noted in *Galante* that in some cases "overriding necessities" of urgency would counsel otherwise, 298 F.2d at 78, and the majority believed that *Galante* itself was a case in which a variety of factors dispensed with the need. *Id.* at 76. Each case turns on its particular facts. Factors the courts have recognized that might obviate the requirement to afford such opportunity are the urgency of the need for a swift ruling, *Galante*, 298 F.2d at 78 (Friendly, J., concurring and dissenting), the extent and clarity of the contemnor's acts of disrespect or obstruction, *Browne*, 318 F.3d at 266–67, and obvious justification for the ruling, *Martin–Trigona*, 759 F.2d at 1025. Even where a contemnor was entitled to speak, such convictions are not necessarily reversed on appeal, especially where the contempt is flagrant and unmistakable, and the deprivation harmless.

In consideration of these principles, we conclude that the conviction in this case must be vacated. A number of reasons contribute jointly to this conclusion. Mandell was not allowed to speak before he was adjudicated in contempt and sentenced; although the court granted his request thereafter to make a record, it is clear the court considered the matter closed. In short, Mandell had no *meaningful* opportunity to speak in his defense. His conduct, furthermore, involved no defiance of the court; Mandell was at all times courteous and respectful. The circumstances presented no urgency. Nor is it clear that Mandell's conduct should have been seen as contumacious, or that an opportunity for him to speak in his defense would have been a useless formality. Where a contempt consists of failure to conform to a court's ruling or instruction,

as opposed to an act of defiance, the risk is high that what the court sees as intransigent disobedience is in fact attributable to misunderstanding. In such circumstances, the opportunity to explain has the highest likelihood of serving a useful purpose and avoiding an unjustified conviction. Given all the circumstances, Mandell was entitled to a meaningful opportunity to speak in his defense.

## CONCLUSION

The judgment holding Mandell in contempt is REVERSED.