Kevin G. **LITTLE**, Petitioner–Appellee,

v.

**KERN COUNTY SUPERIOR COURT, SOUTH DIVISION, TAFT BRANCH,** Respondent–Appellant.

No. 01–16238.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 13, 2002.

Filed June 17, 2002.

---

B.C. Barmann, Sr., and John R. Irby, Bakersfield, CA, for the respondent-appellant.

Scott W. Williams, Berkeley, CA, for the petitioner-appellee.

Before: REINHARDT, NOONAN and
FERNANDEZ, Circuit Judges.

Opinion by Judge REINHARDT;
Concurrence by Judge FERNANDEZ.

## OPINION

REINHARDT, Circuit Judge.

Kern County Superior Court appeals the district court's grant of Kevin G. Little's ("Little") petition for habeas corpus relief from his criminal conviction for contempt imposed by Judge Romero J. Moench of that court. Kern County contends that the district court erred when it found insufficient evidence to support the conviction.[1] We affirm, but on different grounds.

## I. Factual and Procedural Background

Appellee Kevin G. Little represents Terry Adam Doan and Julie Ann Blind Doan ("the Doans") in a number of cases in Kern County, California. The Doans are rather controversial figures in that community, and they are currently engaged in a civil rights action arising out of the alleged misconduct of two police officers of the City of Taft. The Doans allege that a Taft officer sexually assaulted Julie Blind–Doan while she was in custody, and that along

with his partner, the officer harassed her on a number of subsequent occasions.

The contempt charges arise out of Little's representation of the Doans in their April 1997 *nolo contendere* pleas to misdemeanor child endangerment. Little was substituted as counsel for the Doans on the child endangerment case on March 16, 1999. The case was before the Honorable Romero J. Moench, the presiding and only sitting judge in the Kern County Superior Court, South Division, Taft Branch. On the day the alleged contempt occurred, Little was appearing before Judge Moench in a hearing to revoke the probation the Doans received on account of their April 1997 plea to child endangerment. The revocation proceedings were initiated after the Doans were arrested on a number of charges of violating their probation.

Little filed his first motion to disqualify Judge Moench on March 19, 1999, pursuant to California Code of Civil Procedure § 170.1, and the motion was denied on May 27, 1999.[2]

Little filed a second motion to disqualify Judge Moench on January 20, 2000. This motion alleged that Judge Moench's public statements that he was skeptical of those who claimed that the Kern County criminal justice system was corrupt showed that he was biased against the Doans.[3] Judge James P. Cloninger, of the Superior Court of Ventura County, issued an order denying the motion approximately three months later.[4] The order stated that all but one of the allegations in this second

---

1. Except where context indicates otherwise, "Kern County" refers to the Respondent–Appellant, Kern County Superior Court.

2. In his first motion to dismiss, Little alleged that the court was biased in favor of one of the police officers the Doans accused of harassment in the civil suit described above; according to Little's motion, the officer had or claimed to have influence over the court.

3. Judge Moench had written an editorial piece criticizing a book entitled *Mean Justice* (1999). In the book, author Ed Humes al-

leged that wide-spread corruption permeated the Kern County criminal justice system, implicating law enforcement, prosecutors, and even the judiciary. Judge Moench wrote that the book is a "fallacious criticism of the court system." Judge Moench was not involved in any of the cases referred to in the book, nor did he mention the Doans or Little in his piece.

4. Judge Moench could not rule on the motion himself because California prohibits a judge from adjudicating a motion to disqualify

motion had already been adjudicated in the first motion. Judge Cloninger found that the one remaining allegation—Judge Moench's alleged bias on the basis of his public statements—was groundless. The order stated that Little's arguments were "silly" and that Judge Cloninger "[did] not believe that [the motion was filed] in good faith."

Little filed his third motion to disqualify Judge Moench approximately two weeks later. This motion alleged that Little had obtained copies of "scatological political satires" that contained depictions of, and purported to criticize, the judge.[5] Little asserted that he had knowledge that the Doans were being investigated for disseminating the satires, and that Judge Moench must have known that the Doans were thought to be responsible for their creation and distribution. Therefore, Little contended, Judge Moench would be unable to be fair to the Doans, the people who had "victimized" him. Little filed the motion with the clerk in the courtroom, as required by Judge Moench's rules, and the clerk then handed it to the judge. The "satires"[6] were attached to the motion and not sealed.

Judge Moench reviewed the motion and continued the proceedings for four days to allow Little time to file additional informa-

tion regarding when he received the material, in order that he might show that instead of being a "dilatory tactic," the motion was filed in as timely a manner as possible. When the proceedings resumed, Judge Moench determined that the motion to disqualify would have to be heard by another judge and continued all other matters related to the case until after its resolution. For reasons the parties have not made clear to us, the motion was eventually reviewed by the Kern County Counsel who, in a memorandum dated approximately five months after the motion was filed, declared it to be "frivolous" and lacking foundation.[7] Little withdrew the motion shortly thereafter.

On January 4, 2001, almost two-and-a-half months after the withdrawal of the motion, Little appeared before Judge Moench for the completion of the stayed probation revocation proceedings. At the end of the hearing, and without any prior notice, Judge Moench conducted a summary contempt proceeding, in which he found that, eight months earlier, Little had committed direct contempt under California Code of Civil Procedure §§ 1209(a)(1) and 1209(a)(4).[8] As the revocation proceedings were concluding, Judge Moench said to Little, "[Y]ou still have some problems left with you." He then referred to Little's allegedly contemptuous conduct in

---

where he is the object of the motion. Cal.Civ. Proc.Code § 170.3(c)(5).

5. The documents at issue were filed with this court under seal.

6. This is the phrase that Little uses to characterize the exhibit attached to his motion to disqualify.

7. Pursuant to California Rule of Civil Procedure § 170.6, the judge may refer the matter to another judge, the court commissioner, or a referee. The Kern County Counsel's opinion says simply that the matter was "referred" to him, and it is unclear who might have done that or why.

8. The procedure for punishing contempt in California is found in California Code of Civil Procedure § 1211, which states that when contempt is committed in view of the judge the contemnor can be punished summarily. The federal analogue to this rule is Federal Rule of Criminal Procedure 42, which provides a similar procedure for summary proceedings for "direct contempt," and in cases of "indirect contempt," requires notice and a hearing. Fed.R.Crim.P. 42 (2001). Direct contempt is contempt that is committed in the view of the judge, and indirect contempt occurs outside the presence of the judge. *Id.*

filing the third disqualification motion and asked for confirmation that he "[was] supposed to use a script to do this[.]" Thereafter Judge Moench went on for eight transcript pages describing Little's prior disqualification motions, and stating that the "cartoons" [9] submitted by Little in support of the latest motion were "obscenities" and "offensive in the extreme." Thereupon, he found Little in contempt. Only following the making of his contempt finding did Judge Moench ask if Little had anything to say. When Little responded briefly, stating that having been given no notice he could only respond in part to the charges by reasserting that his motion had been filed in good faith, Judge Moench entered the Judgment of Contempt and sentenced Little to serve four days in jail and to pay a four hundred dollar fine.[10] Little was immediately taken into custody and Judge Moench denied his request for bail, despite the fact that the statute provides for an automatic stay of any sentence against an attorney under this section. Cal.Civ.Proc.Code § 1209(c).

Little's appeals through the state court system were unavailing, except for his obtaining of a stay order. Both the California Court of Appeal and the California Supreme Court dismissed his habeas corpus petitions with one-line denials.[11]

Little filed for a writ of habeas corpus in the district court; the district judge found that the factual findings in the Judgment of Contempt were vague and that there was insufficient evidence to demonstrate contempt beyond a reasonable doubt. Accordingly, the district court held that Little's due process rights had been violated and granted the petition for a writ of habeas corpus.

## II. Standard of Review

Because the state courts provided no reason for their denial of Little's habeas petition, we are required to perform an independent review of the record to determine whether those courts erred in their application of controlling federal law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir.2000); *see also Van Tran v. Lindsey*, 212 F.3d 1143, 1153 (9th Cir. 2000). We must then determine whether any error was objectively unreasonable, and finally whether any such error had a "substantial and injurious" effect on the outcome of the proceeding. *Thomas v. Hubbard*, 273 F.3d 1164, 1170 (9th Cir. 2001); *Delgado*, 223 F.3d at 980. In determining whether a state court's decision constituted an "unreasonable application" of the law, we must look primarily to Su-

---

**9.** Judge Moench uses this term to describe the documents at issue.

**10.** Judge Moench issued a two-page Judgment of Contempt and Order. The order opens with two paragraphs that generally refer to the evolution of the contempt charge, including the time and place the disqualification motion was filed, the Kern County Counsel's opinion that the motion was frivolous, and Judge Moench's opinion that Little's explanation of his conduct was "clearly disingenuous." Judge Moench then makes two findings "beyond a reasonable doubt." First, that "[n]o reasonable person or attorney would believe the exhibits had been seen by the Judge prior to being handed them by Mr. Little in open court." Second, that "[b]ased

upon the demeanor of Mr. Little when filing the third motion and exhibits as well as the time, place and manner [of] filing the documents, it is clear beyond a reasonable doubt that Mr. Little's real purpose was to insult the judge and provoke a response that would require recusal and thus boot strap a result that could not be obtained by the previous frivolous motions." Finally, the order stated that Little was found in contempt of court pursuant to California Code of Civil Procedure §§ 1209(a)(1) and (4), sentenced to four days in jail, and fined four hundred dollars. *Id.*

**11.** The district court found that Little had exhausted his state remedies prior to filing his federal habeas corpus petition, and the parties do not dispute this on appeal.

preme Court cases. *Thomas,* 273 F.3d at 1170 (quoting *Fisher v. Roe,* 263 F.3d 906, 914 (9th Cir.2001)).

## III. Due Process Analysis

### A. The Requirements of Notice and Hearing

#### 1. Clearly Established Supreme Court Precedent Establishes that Notice and Hearing are Required for Delayed Summary Contempt Proceedings.

■■■ Among his arguments, Little asserts that Judge Moench violated his due process rights by failing to give him specific notice of the contempt charges and the time of the hearing, and depriving him of a fair opportunity to be heard on the merits of the charges. We agree. In *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the Supreme Court held that, at a minimum, due process requires both notice and the right to be heard before any "deprivation of life, liberty, or property by adjudication." *Id.* at 579, 95 S.Ct. 729 (quoting *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Clearly established Supreme Court precedent specifically requires that notice be given of contempt proceedings, even in instances of direct contempt, when there is a delay between the time that the contempt occurred and the proceedings themselves. *See United Mine Workers of America v. Bagwell,* 512 U.S. 821, 832, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) ("If a court delays punishing a direct contempt until the completion of trial, . . . due process requires that the contemnor's rights to notice and a hearing be respected."); *Codispoti v. Pennsylvania,* 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974); *Taylor v. Hayes,*

418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974); *Harris v. United States,* 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965).

■■ In *Taylor,* 418 U.S. at 497–98, 94 S.Ct. 2697, the Supreme Court held that, although summary contempt proceedings may be delayed, summary adjudication is always "disfavor[ed]," and where delayed, it must be accompanied by notice and a hearing. *See also Sacher v. United States,* 343 U.S. 1, 8, 72 S.Ct. 451, 96 L.Ed. 717 (1952). In that case, the trial judge waited until the end of the trial before punishing the attorney who was the subject of eight charges of criminal contempt allegedly committed during the trial. *Taylor,* 418 U.S. at 488, 94 S.Ct. 2697. The Court held that, given the delay between the allegedly contemptuous conduct and the proceedings on the charges, the contemnor's due process rights were violated: the violation lay in the trial court's failure to give the contemnor notice and an opportunity to be heard. *Id.* at 500, 94 S.Ct. 2697. The Supreme Court reiterated the necessity to afford contemnors due process in *Codispoti,* 418 U.S. at 515, 94 S.Ct. 2707. There, the Court stated that

[w]hen the trial judge, however, postpones until after the trial the final conviction and punishment of the [alleged contemnor] for several or many acts of contempt committed during the trial, there is no overriding necessity for instant action to preserve order and *no justification for dispensing with the ordinary rudiments of due process.*

(emphasis added).

■■ Specifically, the Supreme Court has held that due process requires that the contemnor be given " 'reasonable' notice of the specific charges and opportunity to be heard in his own behalf." [12] *Taylor,* 418

---

12. These principles have been reiterated by the Court throughout its contempt jurisprudence. For example, in *In re Oliver,* 333 U.S.

257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948), when considering secret contempt proceedings held by a judge acting as a one-man

U.S. at 500 n. 9, 94 S.Ct. 2697 (emphasis added). As the Court's decision in *Taylor* makes clear, notice of the contempt charges and of the contempt hearing must be explicit in order to conform to the requirements of due process. The contemnor's due process rights of a reasonable opportunity to be heard are compromised both by a lack of notice of the specific charges against him, as well as by a lack of notice of the time of the contempt hearing. Notice on both issues is required for the contemnor reasonably to be able to respond effectively to the charges against him.

### 2. Notice Was Required Before the Delayed Summary Contempt Proceedings Against Little Could Be Conducted.

Applying these principles, we conclude that notice and a reasonable opportunity to be heard were required in Little's case. First, the summary contempt proceedings occurred almost eight months after the alleged contempt. Kern County argues that, for most of that period, Judge Moench was without the power to rule on the contempt, because of the pending motion to disqualify that constituted the contemptuous act. This argument fails, however, because Little withdrew his motion on October 24, 2000, more than two months before the January 4, 2001 contempt hearing. This certainly was enough

time for Judge Moench to notify Little of the contempt charges and to schedule a hearing that would afford him a reasonable opportunity to be heard. There was certainly "no justification for dispensing with the ordinary rudiments of due process." *Codispoti*, 418 U.S. at 515, 94 S.Ct. 2707. Moreover, under the circumstances in Little's case, it cannot be argued that "action without notice or hearing of any kind [was] necessary to preserve order," *Taylor*, 418 U.S. at 498, 94 S.Ct. 2697: the action was not "instant" and was not taken; it was delayed for over eight months.

### 3. Little Was Denied Notice and a Reasonable Opportunity to Be Heard in Violation of His Due Process Rights.

There can be no doubt that Judge Moench failed to give Little notice of the specific contempt charges or of the hearing in the months prior to the contempt proceeding. When Little's motion was presented to Judge Moench in court, the judge asserted that an earlier motion had not been made in good faith, and that there was no factual support for the new motion.[13] He did not state that he planned on initiating contempt proceedings, but instead simply sprung the contempt matter on Little when Little appeared for his clients' continued probation revocation hearing eight months later. By doing so, Judge Moench deprived Little of notice of the charges and of the time of the hearing, as well as of a reasonable opportunity to be heard on his own behalf.[14]

grand jury, the Court held that notice was necessary because the rights to notice and to be heard are "basic in our system of jurisprudence." Later, in *Harris v. United States*, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965), the Court considered the minimum process due specifically in the context of federal Rule 42 contempt proceedings and held that the notice and hearing requirements of Rule 42(b) described the "procedural regularity" for contempt proceedings and that the summary proceedings allowed under Rule 42(a) are reserved for "those unusual situations ... where *instant action* is necessary to

protect the judicial institution itself." *Id.* at 167, 86 S.Ct. 352 (emphasis added).

13. California Code of Civil Procedure § 170.4(c)(3) requires that a party supply factual support for any new grounds for disqualification after one motion to disqualify has been filed and denied.

14. Although it is not necessary to our outcome, we note that Judge Moench found Little in contempt *before* asking him if he had any response to the "charges" against him.

## B. The Requirement of an Impartial Adjudicator

### 1. Clearly Established Supreme Court Precedent Establishes that an Impartial Adjudicator is Required for Contempt Proceedings.

 Clearly established Supreme Court law holds that "where the contempt charged has in it the element of personal criticism or attack upon the judge," and where delay would not be impracticable, a judge must ask another jurist to rule on the contempt in his place. *Mayberry v. Pennsylvania*, 400 U.S. 455, 464, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971) (citation omitted); *see also Offutt v. United States*, 348 U.S. 11, 13, 15–17, 75 S.Ct. 11, 99 L.Ed. 11 (1954); *Cooke v. United States*, 267 U.S. 517, 539, 45 S.Ct. 390, 69 L.Ed. 767 (1925). Similarly, when a judge has become "personally embroiled" with the alleged contemnor, it is compelling proof that the judge "fail[s ] to represent the impersonal authority of law," and therefore, the judge must ask a judicial colleague to preside over the contempt proceedings. *Offutt*, 348 U.S. at 16, 17, 75 S.Ct. 11, 99 L.Ed. 11 (1954).

The *Mayberry* Court, relying on its holding in *Cooke*, based its decision not only on the judge's behavior towards the contemnor, which indicated "personal embroilment," but on the objective factor: the fact that upon viewing the conduct of the contemnor, "[n]o [judge] so cruelly slandered is likely to maintain that calm detachment necessary for fair adjudication." 400 U.S. at 465, 91 S.Ct. 499. Even in cases in which the contemptuous conduct is not directed squarely at the judge, contemptuous behavior "frequently represents a rejection of judicial authority" such that contempt proceedings may not be heard by the judge who witnessed the contempt. *Bloom*, 391 U.S. at 202, 88 S.Ct. 1477 (holding that alleged contemnors are entitled to a jury trial for instances of serious contempt). Similarly, in *Offutt*, the Court observed that the power to punish summarily for contempt is well within a judge's province to administer the law, but it also observed that:

> The power thus entrusted to a judge is wholly unrelated to his personal sensibilities, be they tender or rugged. But judges are also human, and may, in a human way, quite unwittingly identify offense to self with obstruction to law.

*Offutt*, 348 U.S. at 14, 75 S.Ct. 11. This potential for personal offense requires that a judge recuse himself in such instances.

Furthermore, clearly established Supreme Court precedent holds that the balance of interests weighs even more strongly in favor of having a different judge preside over contempt in cases in which the judge has already delayed contempt proceedings regarding an alleged "personal attack" until the end of trial. *Mayberry*, 400 U.S. at 463–64, 91 S.Ct. 499 ("Where [the judge] does not act the instant the contempt is committed, but waits until the end of the trial, on balance, it is generally wise where the marks of the unseemly conduct have left personal stings to ask a fellow judge to take his place."); *Offutt*, 348 U.S. at 14–15, 75 S.Ct. 11.

### 2. Because Judge Moench Failed to Ask Another Judge to Preside Over the Contempt Proceeding, Little Was Denied His Due Process Right to an Impartial Adjudicator.

 The facts of the present case constitute the precise type of situation in which, the Supreme Court held, a judge must recuse himself. Judge Moench was presented with documents that could constitute "cruel slander" and leave "personal stings," particularly in light of their graphic nature, the fact that the satires specifically target Judge Moench, and the fact that, according to Judge Moench, they

were delivered "smirkingly." As in *Mayberry*, the judge was unlikely to "maintain the calm detachment necessary for fair adjudication" and should have asked another judge to preside over the proceedings. As Little emphasizes in his habeas petition, there also existed numerous other reasons Judge Moench might be biased, including the fact that Little had written a letter to the judge referring to a pattern of harassment and telling the judge that he would be filing a complaint with the Judicial Council, and the fact that Little had previously filed two other motions to disqualify the judge. Therefore the conduct alleged was in the nature of a personal attack requiring recusal of Judge Moench.

The record contains several examples of interaction between Little and Judge Moench that would demonstrate that Judge Moench was "personally embroiled" in this matter, in that he may have taken *personal* offense as the Court discusses in *Offutt*, and may therefore have been biased. *Offutt*, 348 U.S. at 14, 75 S.Ct. 11 (stating that because "judges[sometimes] identify offense to self with obstruction to law," an impartial adjudicator is required for contempt proceedings). Most striking is the fact that the judge found the satire to be an "obscene characterization" of himself and "offensive in the extreme"; also worthy of consideration is the fact that Judge Moench believed Little had delivered the motion "smirkingly." [15] Considering the record as a whole, the district court clearly erred in finding that there was not at least an "appearance" of bias, sufficient to warrant recusal. *See generally Offutt*, 348 U.S. at 14, 75 S.Ct. 11 (stat-

ing that "justice must satisfy the appearance of justice").

Judge Moench should not have presided over the contempt proceedings because the conduct alleged was in the nature of a personal attack, and because Judge Moench's behavior showed bias and personal embroilment. In violation of his due process rights, Little was subjected to summary adjudication of his contempt charge by a judge who, in those circumstances, likely was unable to "maintain that calm detachment necessary for *fair* adjudication." *Mayberry*, 400 U.S. at 465, 91 S.Ct. 499 (emphasis added).[16]

## IV. Conclusion

Our independent review of the due process question "leaves us with a 'firm conviction' that one answer, the one rejected by the [state] court[s], was correct and the other, the application of the federal law that the [state] court[s] adopted, was erroneous—in other words that clear error occurred." *Thomas*, 273 F.3d at 1181 (quoting *Van Tran*, 212 F.3d at 1153–54) (internal quotation marks omitted). The state courts' failure to find a due process violation on the basis of the lack of notice and a reasonable opportunity to be heard, as well as on the basis of Judge Moench's failure to recuse himself in favor of an impartial jurist, was clearly erroneous, and constituted an unreasonable application of "clearly established" Supreme Court precedent. *Van Tran*, 212 F.3d at 1153–54.

The errors at the trial court level so "infected the [contempt proceeding] with unfairness as to make the resulting convic-

---

15. Little also asserts in his habeas petition, and in a letter to Judge Moench, that the Judge attempted to find him in contempt on June 15, 2000. There is nothing further in the record confirming, denying, or explaining this.

16. If any doubt existed as to Judge Moench's lack of impartiality in the contempt proceedings, it was removed by his actions with respect to Little's request for a stay of the jail sentence pending appeal. Judge Moench denied that request in direct contravention of state law. Cal.Civ.Proc.Code § 1209(c).

tion a denial of due process," *Thomas*, 273 F.3d at 1181 (quoting *Donnelly v. De-Christoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). Because such violations satisfy the requirements of *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), in addition to the requirements of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), codified at 28 U.S.C. § 2254 (2001), Little is entitled to a writ of habeas corpus. *See Thomas*, 273 F.3d at 1181. For all the foregoing reasons, we affirm the decision of the district court and unconditionally grant Little's petition for habeas relief.

**AFFIRMED.**

FERNANDEZ, Circuit Judge, concurring:

Part III–A of the majority opinion demonstrates beyond per-adventure that Little was not given proper notice of the contempt proceeding. That being so, there is no real need for the disquisition in part III–B, which unnecessarily declares that the trial judge was a biased judicial officer. While Little did all he could to create a bias record, that is far from saying that Little succeeded in creating bias.

Thus, while I concur in part III–A and in the ultimate result, I do not concur in part III–B.

* The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Cir-