**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Leigh–Davis GLASS, Defendant–**
**Appellant.**

**No. 03–50609.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 1, 2004.

Filed March 17, 2004.

---

**13.** Consequently, we need not address GE's conditional cross-appeal with respect to this   issue.

Before SKOPIL, NOONAN, and BERZON, Circuit Judges.

BERZON, Circuit Judge.

The district court, concerned that indigent legal services be provided only to impecunious defendants, held Leigh–Davis Glass in summary criminal contempt under Federal Rule of Criminal Procedure 42(b) [1]

---

1. Federal Rule of Criminal Procedure 42 states as follows:
Rule 42. Criminal Contempt

(a) Disposition After Notice. Any person who commits criminal contempt may be punished for that contempt after prosecution on notice.

for making false statements during the court's inquiry into her eligibility for such services. We find no fault, of course, with the district court's admonitions that defendants be forthcoming regarding their financial circumstances, so that the court can determine whether appointed counsel is needed, and do not pretermit the possibility that a failure to do so could support a conviction for criminal contempt. We conclude, however, that summary proceedings were inappropriate for adjudicating whether Glass's conduct was contemptuous. We therefore reverse her conviction and remand with instructions that any further contempt proceedings relating to the district court's summary contempt findings be conducted under Rule 42(a) and delayed until the conclusion of Glass's underlying criminal trial.

## BACKGROUND

Glass is scheduled for trial in the district court shortly on several counts of making false declarations and statements in district court civil proceedings, and to the Wells Fargo bank. These charges concern in part the existence and validity of a trust with which Glass claims to have some connection, the "Treasure Chest Trust."

The present appeal arises from Glass's summary conviction for criminal contempt, on December 1, 2003, pursuant to which she was immediately taken into custody. On December 8, after further hearings, the district court declined to vacate the contempt conviction and sentenced Glass to 60 days in custody, stating that Glass's counsel had "talked me down from 6 months to 60 days." Glass served her sentence at the Metropolitan Detention Center in Los Angeles.

On January 5, 2004, the district court altered Glass's sentence to permit her to be released on $40,000 bond the next day. After Glass applied for clarification of the district court's action, the court stated on January 23 that the twenty-four remaining days of Glass's sentence would be "held in abeyance until conclusion of the proceedings."

The events relevant to Glass's contempt conviction began with a hearing on December 1, 2003, at which Glass was supposed to discuss her objections to her appointed counsel, a deputy Federal Public Defender. Prompted by government representations, the district court inquired about whether Glass was eligible for indigent representation, focusing specifically on a

(1) Notice. The court must give the person notice in open court, in an order to show cause, or in an arrest order. The notice must:
  (A) state the time and place of the trial;
  (B) allow the defendant a reasonable time to prepare a defense; and
  (C) state the essential facts constituting the charged criminal contempt and describe it as such.
(2) Appointing a Prosecutor. The court must request that the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney. If the government declines the request, the court must appoint another attorney to prosecute the contempt.
(3) Trial and Disposition. A person being prosecuted for criminal contempt is entitled to a jury trial in any case in which federal law

so provides and must be released or detained as Rule 46 provides. If the criminal contempt involves disrespect toward or criticism of a judge, that judge is disqualified from presiding at the contempt trial or hearing unless the defendant consents. Upon a finding or verdict of guilty, the court must impose the punishment.
(b) Summary Disposition. Notwithstanding any other provision of these rules, the court (other than a magistrate judge) may summarily punish a person who commits criminal contempt in its presence if the judge saw or heard the contemptuous conduct and so certifies; a magistrate judge may summarily punish a person as provided in 28 U.S.C. § 636(e). The contempt order must recite the facts, be signed by the judge, and be filed with the clerk.

Mercedes Benz 500SL car parked near the courthouse and, the government alleged, purchased recently by Glass on eBay for $39,500 plus $1,150 shipping.[2]

Two *in camera* exchanges, not under oath, were the original sources of the court's contempt findings. First, concerning the car's registration, the district judge asked:

Who's the holder of this registration?

Glass: You know, I really don't know.[3]

Court: You don't know who the registered owner of the car is?

Glass: I think it's the family trust, but I'm not sure.

Second, concerning the car's license plates, the district judge asked:

The license number of the car?

Glass: There's no license plate.

Court: Okay. No license plate. Okay.

Aside from the questions Glass answered on December 1, allegedly falsely, Glass also refused to respond to other questions, concerning matters such as the provenance of the Mercedes purchase money and the identity of other people who drove the Mercedes. The district judge noted: "So far, you'[ve] been unwilling to waive your right to remain silent, which I'm not going to cause a problem with. But I know one thing: I've got a car, and I've got control over that car now."

The district court ordered United States marshals to inspect the Mercedes, accompanied by Glass. When the court reconvened, the judge confronted Glass: "You had specifically stated to me that this car was unlicensed. In fact, the Court's re-ceived the printout showing a license number."[4] The district court then recited Glass's earlier answer concerning the car's registration, and concluded that "it appears you've committed perjury. In fact you are the registered owner of this vehicle. The vehicle does have a license number.... Therefore, you are in contempt of this Court.... I'm going to take you into custody."

. The district court thereupon ordered Glass to be taken into custody and the Mercedes stored in the court's basement. Glass, both herself and through counsel, stated to the judge that the Mercedes had been missing until recently and that "there are no license plates on the car." Expressing wider suspicion concerning the financial affidavit Glass had submitted for the purpose of receiving indigent legal services, the district court reiterated the contempt holding: "I've made my record. So you can take this to the Ninth Circuit.... This is an absolute obstruction by your client in my presence on at least two or three occasions. And being under oath is not the criteria under 42[b]."

Despite this seemingly definitive conclusion, the court went on with the hearing. Two documents obtained by marshals from Glass's purse after she was taken into custody were introduced by the district court: (1) an application for vehicle registration dated November 24, 2003, and a registration dated November 26, 2003, both with signatures apparently by Glass; and (2) a letter from Glass's insurance company about the car's recovery. The court stated:

---

2. The record does not reflect how the government learned of the automobile or of the circumstances of its purchase.

3. This statement was later repeated by Glass.

4. As directed by the court, the marshals had investigated the car's Vehicle Identification Number, which identified Glass as the registered owner.

[T]he marshals are present. And pursuant to the search when you were taken into custody, the Court has been given by Marshal Salt—who's the head marshal of the court and is present—two documents that you can look at to refresh your memory along with counsel.... I'm going to have the packet of documents that was taken during the custody search marked as Exhibit 3 and received into evidence.

In response, counsel for Glass argued that as a result of the car's theft, "there's some ambiguity regarding the registration of this car." She added that summary contempt under Ninth Circuit case law was inappropriate for her client's actions.

The court decided to set a hearing for the next day, observing that "I recognize that many, many contempt citations have been overturned by circuit courts.... Trial courts are not going to sit idly by, though. I'll take that risk, but I will slow down." Glass remained in custody, however.

Before the hearing on the next day, December 2, materials describing Glass's alleged eBay transaction were attached by the government as exhibits to a brief supporting the district court's contempt finding. The government also attached detailed financial records of a Washington Mutual Bank account in the name of "The Treasure Chest Trust, Leigh–Davis Glass, Trustee."

Glass's counsel represented at the hearing that she had spoken with an investigator from the car's insurance company to confirm that the Mercedes was stolen and "very recently recovered ... just within the last two weeks." When stolen, "the car, [the investigator] said, had not been registered to Ms. Glass." In addition, Glass's counsel stated, a defense investigator had contacted the DMV, where an employee "confirmed that there currently were no plates on the car [and that] the car only has a temporary registration." No witnesses were sworn at the December 2 hearing, however, or at the next hearing, held on December 8, which resulted in the imposition of Glass's 60–day sentence. On December 8, the district court refused to release Glass on bail but indicated that the sentence would be revisited in early January, and scheduled an interim hearing for December 12.

Also on December 8, the district court reiterated that while he thought Glass had committed indirect contempt by submitting a false affidavit concerning her financial resources in support of her request for appointed counsel, the direct contempt concerned the registration and license plate statements made in the court's presence. And, on December 12, the district court focused once more on the same two aspects of the December 1 hearing, the registration and license plates—"I simply need to state the incident involving the registration and/or the license [to find direct contempt]"—and delayed the false financial affidavit matter, the indirect contempt, until after Glass's trial.

On December 12 as well, Glass and the government submitted briefs concerning the contempt. The government's attached exhibits included further eBay documents, as well as FBI interviews of individuals whose names appear on Treasure Chest Trust documents and a September 2003 deposition of Glass taken by her car insurance company. At the hearing, counsel for Glass had an investigator waiting to testify "that individuals at the Department of Motor Vehicles ... confirmed that the registration process has yet to be completed for the Mercedes," but the investigator was not permitted to testify. Glass also noted that the Vehicle Identification Number printout relied on by the district court shows her as the "R/O" (registered owner)

but the Treasure Chest Trust as the "L/O" (legal owner).

Despite the several hearings, no witnesses testified under oath, no cross-examination of witnesses occurred, and the documents submitted were not authenticated or otherwise tested for admissibility in accordance with the Federal Rules of Evidence.[5]

On December 16, the district court issued the findings required under Federal Rule of Criminal Procedure 42(b).[6] Glass, according to the findings, "committed acts and made statements, consciously and in the presence of this Court, that were designed to disrupt the proper functioning of the Court and thus constituted contempt." The findings recounted that:

> The Court found at the time of the December 1, 2003 morning hearing that Glass's refusal to answer most questions about the purchase and use of the car and the status of the trust and her untruthful answers to the questions that she did answer were designed to prevent the effective inquiry of the Court into the fair and ethical use of indigent legal services.... The Court further elaborates in this document that the conduct constitutes contempt because it undermines the need for a base level of cooperation and honesty in order to have effective administration of justice in the trial courts.

The district court's findings listed thirty facts that "constitute the Defendant's contempt." This list is a wide-ranging compendium of various statements Glass made during the course of the December 1 hearing that the court determined were false or unresponsive. The findings include: "9. Glass also claimed to not know the identity of the registered owner of the car," but also refer to matters such as Glass's refusal to name other drivers of the Mercedes or "any family members from whom she obtained support." No mention was made of the Mercedes license plates.

The district court noted that: "Instead of weakening the Court's findings, more information was presented by the United States Attorney that tends to reaffirm them." The court made clear that the hearings leading up to the imposition of sentence on December 8 strengthened its impression that Glass's "conduct was even more egregious than [the Court] had thought at the time of the initial contempt finding." The district court's findings concluded with a formal finding of contempt under Rule 42(b), explaining that "[o]ver the course of the repeated opportunities given to the Defendant for reconsideration of the Court's contempt finding, it has become absolutely certain that the defendant perjured herself on numerous occasions and otherwise obstructed the proper functioning of the Court."

## DISCUSSION

### I

*Summary Contempt Under Federal Rule of Criminal Procedure 42(b)*

■ For the purposes of this appeal, we assume without deciding that false statements can be the basis for a contempt

---

5. Federal Rule of Evidence 1101(b) states that the Rules of Evidence do not apply to summary contempt proceedings. The manner in which documents were received by the district court in this case is pertinent to the government's argument, addressed below, that the court's hearings satisfied the procedural protections applicable to plenary contempt proceedings under Federal Rule of Criminal Procedure 42(a). *See* section I.C, *infra*.

6. The district court's findings are included in their entirety as an appendix to this opinion.

conviction under 18 U.S.C. § 401,[7] and, perhaps, in some circumstances, can be adjudicated pursuant to the summary procedure provided for under Rule 42(b).[8] We conclude, however, that summary proceedings were improper in this case because neither of the two prerequisites for summary contempt is satisfied: (1) the need to dispel an immediate threat to the court; and (2) contempt committed in the court's presence, proof of which does not require reliance on facts extrinsic to the proceedings.

> Summary contempt is
>
> reserved for exceptional circumstances, such as acts threatening the judge or disrupting a hearing or obstructing court proceedings.... Summary procedure ... was designed to fill the need for immediate penal vindication of the dignity of the court. We start from the premise long ago stated ... that the limits of the power to punish for contempt are [t]he least possible power adequate to the end proposed.

*Harris v. United States*, 382 U.S. 162, 164–65, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965) (quotation marks and citations omitted). Invocation of the summary contempt power must be "an extraordinary exercise to be undertaken only after careful consider-

ation and with good reason," *United States v. Flynt*, 756 F.2d 1352, 1363 (9th Cir. 1985), because "the otherwise inconsistent functions of prosecutor, jury, and judge are united in one individual." *In re Gustafson*, 650 F.2d 1017, 1022 (9th Cir.1981) (en banc).

From the recognition that summary contempt proceedings are justified only in extraordinary circumstances has flowed the enunciation of the limitations on courts' exercise of their summary contempt authority:

> The justification for [summary contempt's] existence is twofold. First, the need to overcome obstructions to ongoing proceedings warrants a procedure whereby a trial judge may, in a summary fashion, remedy a breakdown in the orderly operation of the judicial system. Second, since the judge is personally aware of the allegedly contumacious conduct, the need for a hearing is eliminated. When trial courts have exercised the summary contempt power in a manner that is not consistent with *both* justifications underlying [current Rule 42(b)], appellate courts have found abuses of discretion, even though the power was exercised in response to conduct heard

---

**7.** 18 U.S.C. § 401 states: *"Power of court*
  A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—
    (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
    (2) Misbehavior of any of its officers in their official transactions;
    (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

**8.** *See Harris v. United States*, 382 U.S. 162, 165, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965) ("[W]e assume arguendo that [current Rule 42(b)] may at times reach testimonial epi-

sodes."); *cf. United States v. Dunnigan*, 507 U.S. 87, 93, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993) ("[S]ome of our precedents do not interpret perjury to constitute an obstruction of justice unless the perjury is part of some greater design to interfere with judicial proceedings. Those cases arose in the context of interpreting early versions of the federal criminal contempt statute...."); *United States v. Arredondo*, 349 F.3d 310, 318 (6th Cir.2003) ("[F]alse testimony alone, whether written or oral, will not amount to contempt of court." (quotation marks and citation omitted)). *See generally* J.A. Bock, Annotation, *Perjury or false swearing as contempt*, 89 A.L.R.2d 1258 (1963, updated 2003).

or seen by the judge and committed in the actual presence of the court. *Flynt*, 756 F.2d at 1363 (footnote and citations omitted).

■ The imperative that imposition of summary contempt be restricted to extreme situations has also informed our standard of review of summary contempt convictions. We have encouraged district judges to make "explicit determination[s] that plenary procedures are inadequate and summary procedures are necessary." *Gustafson*, 650 F.2d at 1023. "Where the record demonstrates that the trial judge did not fully consider the relative appropriateness of summary and plenary adjudication of contempt, we must independently evaluate the need for summary procedures." *Id.*

Here, the court instantly invoked summary contempt on December 1, without warning to the defendant that he was considering doing so should she not alter her conduct,[9] and immediately ordered Glass placed in custody. In neither that hearing nor any subsequent one did the district court explicitly weigh whether to proceed under the plenary procedures provided for in Rule 42(a) rather than the summary ones provided for in Rule 42(b).[10]

We therefore proceed independently to "evaluate the need for summary procedures." *Gustafson*, 650 F.2d at 1023.

## A. *Nature of the Contempt*

The first consideration in determining if this case presents one of the "exceptional circumstances," *see Harris*, 382 U.S. at 164, 86 S.Ct. 352, in which summary contempt is justified concerns whether Glass's behavior so obstructed ongoing proceedings as to necessitate an immediate response. The case law addresses this factor in part by determining whether the circumstances are such that there is time to follow Rule 42(a)'s plenary procedures, or whether, instead, court proceedings would have to be interrupted for those procedures to be implemented.

*Harris*, for example, held summary contempt proceedings unjustified when a witness refused to testify in front of a grand jury, while *United States v. Wilson*, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975), permitted summary proceedings where similar obstructive conduct occurred during a trial. *Wilson*, contrasting *Harris*, emphasized that a grand jury, unlike a trial court, could move on to other matters while plenary contempt proceedings under Rule 42(a) were initiated in lieu of summary process. *See Wilson*, 421 U.S. at 318–19, 95 S.Ct. 1802.

■ This case, concerning a pretrial hearing, is far more analogous to *Harris* than to *Wilson*. As shown by the series of post-December 1 hearings held by the district court, "time [was] not of the essence." *See Wilson*, 421 U.S. at 319, 95 S.Ct. 1802 (in such circumstances "the provisions of [current Rule 42(a)] may be more appropriate to deal with contemptuous conduct"); *see also Harris*, 382 U.S. at 164, 86 S.Ct. 352 ("[S]wiftness was not a prerequisite of justice here. Delay necessary for a

9. *Cf. United States v. Powers*, 629 F.2d 619, 624 (9th Cir.1980) ("Although the language of the [summary contempt] rule does not require that a warning be given, courts have recognized that a warning is favored before the power of the court is exercised.").

10. By contrast, in *Gustafson*, which upheld a summary contempt conviction, "the trial judge realized that summary contempt is only appropriate when needed to promote the judicial function. He specifically found that the misbehavior left him no alternative but to summarily punish." 650 F.2d at 1023. We noted that "Gustafson's contempt, if left unpunished, might have spawned other misconduct." *Id.*

hearing would not imperil the ... proceedings."). Glass's trial was scheduled for January 27, providing adequate time for full contempt proceedings even if the court was intent that they be completed before trial rather than afterwards. In addition, the district court's eventual decision to allow the Federal Public Defender to continue representing Glass indicates that immediate action to determine whether she was eligible for appointed counsel was not necessary in the interest of the public fisc.

We therefore conclude that this was not a situation in which "the authority of the court [had to] be immediately asserted to restore order." *United States v. Lee*, 720 F.2d 1049, 1052 (9th Cir.1983). Immediate incarceration, moreover, was by no means justified as "[t]he least possible power adequate to the end proposed." *Harris*, 382 U.S. at 165, 86 S.Ct. 352 (quotation marks and citation omitted). As Glass's conduct was not "such an open, serious threat to orderly procedure that instant and summary punishment, as distinguished from due and deliberate procedures, [was] necessary," *Gustafson*, 650 F.2d at 1022 (quoting *Harris*, 382 U.S. at 165, 86 S.Ct. 352 (citation omitted)), summary criminal contempt was not justified.

### B. *Extrinsic Investigation*

■ Pursuant to Rule 42(b), summary contempt must be committed in the court's presence. This criterion is met only "where all of the essential elements of the misconduct are under the eye of the court [and] are actually observed by the court." *Pounders v. Watson*, 521 U.S. 982, 987–88, 117 S.Ct. 2359, 138 L.Ed.2d 976 (1997) (per curiam) (quotation marks and citations omitted). Thus, "a judge who exercises the summary contempt power [must have] full and immediate knowledge of the facts relevant to an adjudication for contempt." *Flynt*, 756 F.2d at 1364; *see also United*

States v. Marshall, 451 F.2d 372, 374 (9th Cir.1971) ("If [a judge] must depend upon the testimony of other witnesses or the confession of the contemnor for his knowledge of the offense, [current Rule 42(b)] does not apply."). By contrast, regular contempt proceedings are required "to inform the court of events not within its own knowledge." *Sacher v. United States*, 343 U.S. 1, 9, 72 S.Ct. 451, 96 L.Ed. 717 (1952).

This distinction is grounded in due process considerations. Summary contempt is based on the premise "that no hearing is necessary because the judge already knows the facts. If he does not know the facts, a hearing is necessary to discover what the facts are. If, despite the uncertainty, no evidentiary hearing is had, the obvious risk is that innocent persons may be summarily adjudicated and punished." *Marshall*, 451 F.2d at 377. Thus, only if there can be no factual disputes to try because the judge *saw* all the pertinent facts with his own eyes are we willing to allow someone to be punished without the ordinary requisites of a due process hearing, including notice and an opportunity to defend oneself, as prescribed in Rule 42(a). That is why summary contempt "aims at cases where the judge has witnessed the conduct himself and does not need independent proof." *United States v. Browne*, 318 F.3d 261, 266 (1st Cir.2003).

■ If, on the other hand, "some essential elements of the [contempt] offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge," due process mandates the protections inherent in a fair hearing. *In re Oliver*, 333 U.S. 257, 275–76, 68 S.Ct. 499, 92 L.Ed. 682 (1948); *see also Lee*, 720 F.2d at 1053. The principle extends to situations in which "there is a delay between the time that [a summary] contempt occurred and the proceedings themselves;" due process

notice and hearing protections attach in such circumstances. *See Little v. Kern County Superior Court,* 294 F.3d 1075, 1080–81 (9th Cir.2002); *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.,* 244 F.3d 1128, 1138 (9th Cir.2001).

■ In this case, the district court relied on out-of-court facts, largely provided by marshals, to establish the basis for Glass's summary contempt. The district court's findings about Glass's allegedly false statements were disputed on the basis of evidence unavailable to the court at the time the contempt was allegedly committed. Instead, the court's contempt finding relied on out-of-court observations by the marshals; documents found by the marshals when searching Glass; and documents appended to the government's briefs and apparently obtained from, inter alia, eBay, the DMV, Washington Mutual Bank, Glass's insurance company, and the FBI.

In short, the factual issues undergirding this contempt conviction "could not be explored properly until after evidence was taken . . .—an inquiry fitting in a [current Rule 42(a)] proceeding but not amenable to a . . . summary contempt hearing." *United States v. Engstrom,* 16 F.3d 1006, 1011 (9th Cir.1994). In these circumstances, the district court's reliance on summary contempt procedure was improper.

### C. *Process Due Under Rule 42(a)*

■ As noted, summary contempt procedure "represents a significant departure from the accepted standards of due process." *Flynt,* 756 F.2d at 1363. The government argues that, even if summary proceedings were not warranted, the district court's multiple hearings after December 1

satisfy the due process requirements embodied in Rule 42(a) and were thus adequate to permit Glass's conviction to stand. We disagree.

First, the transcript indicates that after the initial December 1 hearing, for the most part "the purpose of the [subsequent] hearing[s] was simply to impose sentence. Appellant's guilt had already been determined." *United States v. Abascal,* 509 F.2d 752, 756 n. 9 (9th Cir.1975). The district court pronounced Glass guilty of contempt at the December 1 hearing. Glass's imprisonment during the course of the post-December 1 hearings indicates that the pronouncement of guilt was immediately operative. The district court's later statements, for example, one on December 2 acknowledging that Glass's counsel had "talked me down from 6 months to 60 days," confirm that the primary purpose of the later hearings was to determine the severity of the sentence imposed.

Second, to the degree that the district court was willing at the hearings to reconsider his adjudication of contempt, the procedures the court followed in doing so did not comply with Rule 42(a). The only notice given of the lion's share of the district court's ultimate contempt findings was at the *conclusion* of the proceedings, with the district court's written ruling, rather than before trial, as required by Rule 42(a). Of the statements and omissions the district court cited as factual findings supporting the contempt conviction, Glass was only given proper notice beforehand of the registration issue.[11] Yet, Rule 42(a) requires, inter alia, notice of "the essential facts constituting the charged criminal contempt."[12]

Third, Glass's proffered explanations and rebuttal evidence were not addressed

11. The license plate issue orally cited by the district court at the outset as a basis for the contempt conviction does not appear in the written findings of December 16.

12. Even certain cases of summary contempt require better notice than was provided to Glass. *See Little,* 294 F.3d at 1081 (holding in a case of delayed summary contempt pro-

by the district court despite lengthy hearings, and she was not given any opportunity to cross-examine the individuals who produced the evidence procured by the government and the district court, or to call witnesses such as the defense investigator.[13]

The circumstances here are in contrast with those in *In re Allis*, 531 F.2d 1391 (9th Cir.1976), in which we approved procedures accorded by a district judge—who erroneously invoked summary contempt—as conforming with the due process requirements of current Rule 42(a). In *Allis*, "[n]o extension of time to prepare a defense ... was requested by Allis or his counsel. The facts were clear and undisputed. At no time was an indication given of the availability of other witnesses or evidence to support a defense of justification or excuse." 531 F.2d at 1393. Here, to the contrary, Glass attempted unsuccessfully to mount a witness and evidence-based defense to the charges of contumacious conduct, all the while constrained by her incarceration, but was not afforded the opportunity to do so.

We hold that Glass was not accorded adequate process due under Rule 42(a) to compensate for the district court's erroneous decision to employ Rule 42(b)'s summary procedure.

## Conclusion

For the foregoing reasons, we reverse Glass's contempt conviction and remand for further proceedings consistent with this opinion. Further, there appears to be no rationale for proceeding with any contempt hearings before trial, and good reason not to, namely, that the contempt charges are interwoven with the pending charges in Glass's underlying criminal trial, raising Fifth Amendment self-incrimination issues. The existence and validity of the Treasure Chest Trust are questions relating to the indictment scheduled for trial, while at the same time the Trust is also the subject of several of the district court's factual findings of contempt. The district court recognized the danger of influencing the trial through the contempt proceedings when he delayed the Rule 42(a) proceedings on the alleged indirect contempt until after the trial, and also when he released Glass from custody on the present contempt conviction until then. We therefore direct that no renewal of contempt proceedings against Glass concerning the matters described in the district court's summary contempt findings shall occur prior to the conclusion of her trial on the underlying indictment.

We recognize that the district court expressed exasperation not only with Glass's behavior, but also with appellate court rulings in contempt cases. That difficult litigants, such as the district court considers Glass to be, present a challenge to the judiciary goes without saying. When summary contempt proceedings are both necessary because of the exigency involved and consistent with due process because

ceedings that "[t]he contemnor's due process rights of a reasonable opportunity to be heard are compromised ... by a lack of notice of the specific charges against him.").

**13.** For explication of the "procedural protections ... afforded for contempts occurring out of court, where the considerations justifying expedited procedures do not pertain," see *F.J. Hanshaw Enterprises*, 244 F.3d at 1139: "An individual charged with an indirect criminal contempt is entitled to the right to be

advised of the charges; the right to a disinterested prosecutor; the right to assistance of counsel; a presumption of innocence; proof beyond a reasonable doubt; the privilege against self-incrimination; the right to cross-examine witnesses; the opportunity to present a defense and call witnesses; and the right to a jury trial if the fine or sentence imposed will be serious." (quotation marks and citations omitted).

the essential facts took place before a judge, they are permitted. Otherwise, the deterrent effect of potential *later* punishment is presumed sufficient to keep litigants from obstructing judicial proceedings. Also, Rule 42(a) does not specify any time period within which plenary proceedings must take place, beyond specifying a "reasonable time to prepare a defense." "Whether the time allowed was reasonable depends on the circumstances of the particular case." *Lee,* 720 F.2d at 1053. It should therefore ordinarily be possible, where the summary contempt standards are not met, to accommodate both the need for fairly prompt imposition of punishment where the judge properly perceives such a need and the requisites set by Rule 42(a). Thus, while it may appear that federal trial judges are being required to display the patience of Job, in fact the Federal Rules of Criminal Procedure and the Due Process Clause do allow contemptuous conduct, once properly determined to be such, to be both punished and deterred, albeit not precipitously.

**REVERSED AND REMANDED.**

APPENDIX

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES of America, Plaintiff(s),

v.

Leigh–Davis GLASS, Defendant(s).

CASE NO. SACR 02–331 DOC.

Filed Dec. 16, 2003.

FINDINGS REGARDING SUMMARY CONTEMPT (FED. R. CRIM. P. 42(b))

CARTER, District Judge.

On December 1, 2003, the Court found that Defendant, Leigh–Davis Glass ("Glass"), committed acts and made statements, consciously and in the presence of this Court, that were designed to disrupt the proper functioning of the Court and thus constituted contempt. The Court will outline the relevant background of the case in order to allow the Court of Appeals to understand the totality of the circumstances and then will specifically enumerate the facts that constitute the contempt. *See generally United States v. Marshall,* 451 F.2d 372 (9th Cir.1971).

Defendant is under indictment for violation of 18 U.S.C. § 1623, alleging that Glass made false statements and declarations under penalty of perjury. The false statements and declarations allegedly took place in a civil action before the Honorable Judge Gary L. Taylor, *The Leigh–Davis Glass Limited Liability Partnership v. The A. Fordney and M.T. Fordney 1990 Family Trust UDT Dated July 20, 1990, et al.,* Case No. SACV 02–246 GLT. (See Indictment, Ex. A.)

On December 2, 2002, Defendant, Leigh–Davis Glass, signed an affidavit under penalty of perjury in support of a request for attorney and other court services without payment of fee. Based on this affidavit, the Federal Public Defender was appointed as Defendant's counsel. Also on December 2, 2002, Glass was released on a $5,000 unsecured appearance bond. Glass did not provide proof of income to pretrial services as required as a condition of her pretrial supervision. It was represented to the Court that Pretrial Services was very concerned that Glass was not being either open or truthful in disclosure of her employment and sources of income.

The December 1, 2003, morning hearing at which the contempt took place was in

reference to complaints that Glass had about the competence and dedication of her appointed Deputy Federal Public Defender, Joan Freeman. These complaints were based on Glass having consulted various private counsel about her case and receiving advice from private counsel contradictory to her counsel's efforts on her behalf.

Upon information from the United States Attorney that Defendant had purchased a red Mercedes Benz 500SL for approximately $39,000 cash in the recent past, the Court's inquiry eventually turned to Glass's qualifications for representation by the Federal Public Defender. It was in relation to that inquiry that Defendant's contempt of this Court took place.

The Court finds that the following facts constitute the Defendant's contempt:

1. The United States Attorney represented that Glass had purchased an automobile for the amount of $39,572 while allegedly indigent.

2. Glass represented that the funds did not come from her personally, but rather from a family trust.

3. Upon examination concerning the nature and control of this trust, Glass stated that she was one of the trustees but that there were other trustees.

4. When the Court attempted to determine whether Glass had complete control over the money in the trust and was asked to name the other trustees, Glass represented that she did not know who the other trustees were because the family trusts were created before she was born.

5. Glass stated that she could not direct money from the trust account.

6. Glass further did not answer the Court's questions regarding the au-thorization of money to be withdrawn from the trust to pay for the car. Specifically, she would not name the person who authorized the money to be withdrawn from the account.

7. When asked by the Court to name the drivers of the car, Glass indicated that there were other drivers but explicitly refused to name them.

8. Glass claimed to be the person who drove the car the least.

9. Glass also claimed to not know the identity of the registered owner of the car.

10 Glass claimed that her family resources might be used to retain private counsel.

11. When asked about the resources of her family ties, Glass would only offer that her family is "very large," but would not name any family members from whom she obtained support.

12. In general, Glass freely spoke on areas that could be seen as beneficial to her such as the funds coming from a trust and not herself, but once the trust was used as her explanation she refused to answer any further questions related to the trust or the original source of the $39,522 in cash paid for the purchase of the red 500SL Mercedes Benz.

13. Neither Glass nor her attorney invoked her Fifth Amendment right to be free from self-incrimination at any time nor was the Court put on notice that any of the questions might be self-incriminating. The Court was first put on notice about possible Fifth Amendment issues on December 12 when appellate counsel for Defendant made his appearance.

14. Glass was consistently firm and confident in areas where the Court's questions would allow her to improve her position, e.g. the money for the our having technically come from a trust account, and conveniently confused, uncertain, and unknowledgeable with regard to closely related follow-up questions that might not help her position, e.g. the existence and identity of other trustees and the registration status of the car.

15. The Court, recognizing from Glass's testimony and demeanor that she was lying about the registration of the car, had the United States Marshal's Service run a Department of Motor Vehicles registration check on the Mercedes during the December 1 morning hearing. The registration check showed the car's registered owner to be Leigh–Davis Glass. A copy of the printout of the registration check result is attached to this order as Exhibit B.

16. The Court found at the time of the December 1, 2003 morning hearing that Glass's refusal to answer most questions about the purchase and use of the car and the status of the trust and her untruthful answers to the questions that she did answer were designed to prevent the effective inquiry of the Court into the fair and ethical use of indigent legal services in the Central District of California.

17. The Court further found at the time, and so stated on the record and in open court, that Glass's obstruction of this necessary obligation of the Court constitutes contempt.

18. The Court further elaborates in this document that the conduct constitutes contempt because it undermines the need for a base level of cooperation and honesty in order to have effective administration of justice in the trial courts.

19. To promote fairness and with the understanding that decisions made in the heat of a moment often lack the wisdom of more considered judgment, the Court allowed Glass and her counsel to make further appearances on the afternoons of December 1, 2003, December 2, and December 8 in order to present a case for reconsideration of the Court's contempt finding.

20. Instead of weakening the Court's findings, more information was presented by the United States Attorney that tends to reaffirm them.

21. Financial statements were provided that show that the account from which funds were wired to pay for the Mercedes is in the name of "The Treasure Chest Trust DTD 07/19/02, Leigh–Davis Glass, Trustee, PO Box 752, Malibu, CA 90265." No other trustee was listed.

22. Leigh–Davis Glass has used the address "PO Box 752, Malibu, CA" as a personal address independent from the trust. See, e.g., Ex. B.

23. Glass reported the Mercedes stolen one week after purchasing it off of Ebay and filed a claim with her insurance company for recovery.

24. In her affidavit to the insurance company regarding the vehicle theft, Glass stated that she was the principle user of the vehicle and the principle use was "pleasure."

25. Glass continued to refuse to answer the Court's inquiries into her

sources of income and the nature of the Treasure Chest Trust.

26. The bank account of "Treasure Chest Trust, Leigh–Davis Glass as Trustee," at Washington Mutual Bank, account number 429–058371–9, shows on July 24, 2002, an opening deposit of $81,431.18. The deposits prior to November 22, 2002 totaled approximately $150,000.

27. At the time she signed the affidavit requesting the services of the Public Defender on December 2, 2002, Glass's trust's monthly deposits were $65,025.21. The following month the deposits were $115,717.84.

28. The transaction date for the wire transfer for the purchase of the red 500SL Mercedes Benz in the amount of $39,522 was on April 20, 2003 from account number 429–058371–9.

29. The Application for Title or Registration with the California Department of Motor Vehicles dated November 24, 2003, and signed by Leigh–Davis Glass shows the owner of the Mercedes to be Leigh–Davis Glass, 19150 Pacific Coast Highway, Malibu, CA 90265 which is her personal residence. While not directly relevant to the contempt, the document also states a purchase price of $10,000 instead of the actual purchase price of $39,522.

30. Finally, on December 8, 2003, after careful reconsideration and numerous opportunities for the defense to present arguments for reconsideration, the Court, having found that the conduct was even more egregious than it had thought at the time of the initial contempt finding, sentenced Defendant, Leigh–Davis Glass, to 60 days in custody.

On December 12, 2003, upon the first motion of defense counsel, the Court set bond pending appeal in the amount of $40,000. The Court also expressed the possibility that Glass's sentence might be commuted to 30 days in order to allow her to better prepare for her own defense in the underlying case.

Over the course of the repeated opportunities given to the Defendant for reconsideration of the Court's contempt finding, it has become absolutely certain that the defendant perjured herself on numerous occasions and otherwise obstructed the proper functioning of the Court. For the reasons and rationales given in this document, particularly those in ¶¶ 1–18 but reaffirmed by those in ¶¶ 19–30, the Court finds the Defendant in contempt pursuant to Fed.R.Crim.P. 42(b).